**2021 UT App 12**

## THE UTAH COURT OF APPEALS

BRITTNEY TURPIN,
Appellee,
*v.*
VALLEY OBSTETRICS AND GYNECOLOGY, BRIAN L. WOLSEY,
JENNIFER BOOTH, AND SCOTT S. REES,
Appellants.

Opinion
No. 20200015-CA
Filed February 11, 2021

Fourth District Court, Spanish Fork Department
The Honorable Jared Eldridge
No. 180300203

Jaryl L. Rencher and Benjamin Lusty, Attorneys
for Appellants

John M. Macfarlane, Richard Eric Shelton, and
P. McKay Corbett, Attorneys for Appellee

JUDGE JILL M. POHLMAN authored this Opinion, in which
JUDGE DIANA HAGEN and SENIOR JUDGE KATE APPLEBY
concurred.[1]

POHLMAN, Judge:

¶1     Brittney Turpin discovered she had ovarian cancer after undergoing surgery for what her doctors diagnosed as an ovarian cyst. Turpin filed a medical malpractice action against Valley Obstetrics and Gynecology; Brian L. Wolsey, M.D.;

---

1. Senior Judge Kate Appleby began work on this case as an active member of the Utah Court of Appeals. She completed her work as a senior judge sitting by special assignment as authorized by law. *See generally* Utah R. Jud. Admin. 11-201(6).

Jennifer Booth, ACNP; and Scott S. Rees, D.O. (collectively, Defendants) for their alleged negligence in failing to properly diagnose and treat her. Nearly six months after filing suit, Turpin moved to compel arbitration pursuant to the parties' agreement. Defendants opposed Turpin's motion, contending that she had waived her right to arbitrate by substantially participating in litigation and that they were prejudiced by her filing. Without reaching the question of prejudice, the district court granted Turpin's motion, concluding that she had not substantially participated in litigation and thus had not waived her right to arbitrate.

¶2     We affirm the district court's decision, albeit on alternate grounds. Applying this court's precedent, we conclude that Turpin substantially participated in litigation by filing her malpractice claims in district court. And having been invited by Defendants to reach the question of prejudice on the record before us, we conclude that Defendants have not shown that they were prejudiced as a result of Turpin's filing.

## BACKGROUND[2]

¶3     Turpin visited Valley Obstetrics and Gynecology for an annual check-up in March 2014. Several days after her visit, she returned because she was experiencing severe pelvic pain. An ultrasound revealed free fluid in Turpin's pelvis and a large ovarian mass. Dr. Rees diagnosed Turpin with polycystic ovarian syndrome and recommended surgery to remove the mass.

---

2. In ruling on Turpin's motion to compel arbitration, the district court made few factual findings, and most of the relevant facts are undisputed procedural facts. For the limited purpose of providing context for this appeal, we recite some additional facts as they are alleged in Turpin's complaint. *See infra* ¶¶ 3–5.

¶4     Two weeks later, Drs. Wolsey and Rees tried to surgically remove Turpin's ovarian mass using a technique called morcellation, which involves fragmenting the mass into smaller pieces to aid removal. The doctors removed what they could but left several pieces of the mass inside Turpin's abdomen. Subsequent tests performed on the extracted pieces revealed that the mass was actually a cancerous tumor. Turpin has since undergone additional surgeries and aggressive chemotherapy under the care of other doctors.

¶5     Turpin believes that Defendants were negligent in not making the correct diagnosis before operating and that the surgery itself was negligently performed. Accordingly, in 2018, she served notices of intent to commence legal action against Defendants pursuant to the Utah Health Care Malpractice Act (the Act), Utah Code Ann. §§ 78B-3-401 to -426 (LexisNexis 2018 & Supp. 2020).[3] Pursuant to statute, the Division of Occupational and Professional Licensing (DOPL) provided a prelitigation hearing panel, at which the parties appeared with counsel to address Turpin's claims.[4] *See id.* § 78B-3-416 (Supp. 2020).

---

3. Because recent statutory amendments are not material in this case, we cite the current version of the Utah Code for convenience.

4. Under the Act, a plaintiff must submit a malpractice claim to a prelitigation panel as a prerequisite to filing a lawsuit. Utah Code Ann. § 78B-3-416(1)(c), (2)(a) (LexisNexis Supp. 2020). The proceedings are "informal and nonbinding but also compulsory as a condition precedent to commencing litigation." *Jensen v. Intermountain Healthcare, Inc.*, 2018 UT 27, ¶ 8, 424 P.3d 885 (cleaned up). "After it completes its review, the hearing panel issues an opinion and a certificate acknowledging that the plaintiff has complied with [the Act's] prelitigation requirements." *Id.*

¶6 After resolution of the DOPL proceedings, Turpin filed claims for medical malpractice against Defendants in district court. Defendants moved to dismiss the complaint, arguing that the claims were barred by the Act's statute of repose. Turpin opposed Defendants' motion, and the court ruled in her favor. Defendants then answered Turpin's complaint and the parties exchanged initial disclosures.

¶7 Just a few weeks later, and nearly six months after filing her complaint, Turpin moved to compel arbitration based on an agreement she had signed during her third visit with Defendants. The agreement provided that Turpin would resolve any medical malpractice claims she may have against Defendants through informal negotiation, non-binding mediation, or binding arbitration. Turpin could choose her preferred method of resolution, but she waived her right to have any malpractice claim against Defendants "decided by a judge or jury."

¶8 Defendants opposed Turpin's motion and argued that she had waived her right to arbitrate by filing her claims in district court. Citing the two-part test first articulated by the Utah Supreme Court in *Chandler v. Blue Cross Blue Shield of Utah*, 833 P.2d 356 (Utah 1992), Defendants argued that (1) Turpin had substantially participated in litigation to a point inconsistent with the right to arbitrate and (2) her participation had prejudiced Defendants. The court disagreed and ordered the case to arbitration. It concluded that Defendants had not shown that the substantial participation prong of the *Chandler* test was met, noting that Turpin "did not participate in written discovery or conduct depositions, file motions with the Court, or engage in any significant discovery of months of time." Having reached that conclusion, the court found it unnecessary to address Defendants' claim of prejudice. Defendants appeal.

ISSUES AND STANDARD OF REVIEW

¶9    Defendants contend that the district court erred in granting Turpin's motion to compel arbitration. For the reasons described below, *see infra* ¶¶ 12–17, the court's determination is a legal conclusion that we review for correctness. *ASC Utah, Inc. v. Wolf Mountain Resorts, LC*, 2010 UT 65, ¶ 11, 245 P.3d 184.

¶10    Defendants also invite us to decide, in the first instance, whether they were prejudiced by Turpin's participation in litigation. Because Defendants' claims of prejudice are based solely on the assertions made in their legal memoranda, we accept their invitation and make the determination as a matter of law. *See id.*

ANALYSIS

¶11    The Utah Supreme Court first articulated the test for whether a party has waived its right to arbitrate in *Chandler v. Blue Cross Blue Shield of Utah*, 833 P.2d 356 (Utah 1992). There, the court stated, "Waiver of a right of arbitration must be based on both a finding of participation in litigation to a point inconsistent with the intent to arbitrate and a finding of prejudice." *Id*. at 360 (cleaned up). Because policy favors arbitration, "there is also a strong presumption against waiver of the right to arbitrate." *Central Fla. Invs. Inc. v. Parkwest Assocs.*, 2002 UT 3, ¶ 24, 40 P.3d 599. "The party claiming waiver has the burden of establishing substantial participation and prejudice." *Id*.

¶12    Before we address the two prongs of the *Chandler* test, we must first resolve the parties' dispute over the proper standard of review.

I. Standard of Review

¶13    Citing *Chandler*, Turpin argues that the district court's determination that she did not substantially participate in

litigation is a factual one to which we owe deference. In contrast, Defendants cite *ASC Utah, Inc. v. Wolf Mountain Resorts, LC*, 2010 UT 65, 245 P.3d 184, and argue that "[b]ecause this case involved no disputed determinations of fact . . . and was resolved solely on documentary evidence alone," the applicable standard of review is correctness. We agree with Defendants.

¶14    Turpin is correct that, for nearly two decades, Utah appellate courts treated a district court's decision about a party's waiver of its right to arbitrate as a fact-intensive decision. Beginning with *Chandler*, our supreme court explained that the existence of both substantial participation and prejudice "should be reviewed as factual determinations," with the "dispositive issue" being "whether there [was] sufficient support in the record to uphold the trial court's findings." *Chandler v. Blue Cross Blue Shield of Utah*, 833 P.2d 356, 360 (Utah 1992). And the court applied this standard, even though the relevant facts in *Chandler* were "not in dispute."[5] *Id.*

¶15    Until 2010, Utah appellate courts applied this standard of review in every case that followed. *See Pledger v. Gillespie*, 1999 UT 54, ¶ 16, 982 P.2d 572 ("[T]he actions or events allegedly supporting waiver are factual in nature and should be reviewed as factual determinations, to which we give a district court

---

5. In dissent, Justice Zimmerman expressed puzzlement over the majority's articulation of the standard of review, observing that "[t]he trial court made no factual findings on disputed evidence in determining that the standard for waiver was met, and there was no dispute as to the relevant facts." *Chandler v. Blue Cross Blue Shield of Utah*, 833 P.2d 356, 361–62 (Utah 1992) (Zimmerman, J., concurring and dissenting). In his view, "[t]he trial [court] was either correct in concluding that the uncontroverted facts satisfied the legal standard or [it] was not. There is no room here for the exercise of trial court discretion on this question." *Id.* at 362.

deference."); *Central Fla. Invs. Inc. v. Parkwest Assocs.*, 2002 UT 3, ¶ 20, 40 P.3d 599 (same); *Cedar Surgery Center, LLC v. Bonelli*, 2004 UT 58, ¶ 6, 96 P.3d 911 (same); *Smile Inc. Asia Pte. Ltd. v. BriteSmile Mgmt., Inc.*, 2005 UT App 381, ¶ 20, 122 P.3d 654 (same); *see also Baker v. Stevens*, 2005 UT 32, ¶ 14, 114 P.3d 580 ("We have noted that the finding of the existence of substantial participation and the finding of the existence of prejudice are factual in nature and therefore should be reviewed as factual determinations." (cleaned up)). But in *ASC Utah*, our supreme court articulated a different standard. There, the court stated, for the first time in the *Chandler* context, that "when a district court denies a motion to compel arbitration based on documentary evidence alone, it is a legal conclusion that is reviewed for correctness." *ASC Utah*, 2010 UT 65, ¶ 11.

¶16    Turpin invites us to overlook this statement, arguing that "the standard of review in *ASC Utah* does not apply here" because the *ASC Utah* court decided only whether the *Chandler* test applied in that case and did not evaluate whether the evidence supported the district court's waiver determination. But we read *ASC Utah* differently. The supreme court referred to the district court's determinations under the *Chandler* test as "legal conclusions," *ASC Utah*, 2010 UT 65, ¶ 25, and it examined the undisputed evidence to independently evaluate whether the defendant had substantially participated in litigation to a point inconsistent with arbitration, *id.* ¶¶ 30–34, and whether the plaintiff had been prejudiced as a result, *id.* ¶ 36. Further, the supreme court ultimately determined that the district court's conclusions were "correct," and it never once suggested that it was deferring to the district court's judgment. *Id.* ¶¶ 1, 29–40.

¶17    We acknowledge that the standard of review applied in *ASC Utah* is different from the standard applied in *Chandler*, even though in each case the waiver question was evaluated based on undisputed, documentary evidence. But we are bound to strictly follow the decisions rendered by our supreme court,

and that includes following its most recent pronouncement on the applicable standard of review. *See Ortega v. Ridgewood Estates LLC*, 2016 UT App 131, ¶ 30, 379 P.3d 18 ("We are bound by vertical stare decisis to follow strictly the decisions rendered by the Utah Supreme Court." (cleaned up)); *Gary Porter Constr. v. Fox Constr., Inc.*, 2004 UT App 354, ¶ 15 n.2, 101 P.3d 371 (recognizing that this court must follow the Utah Supreme Court's "most recent" pronouncement on an issue).[6] Thus, because the district court's substantial participation determination was made based on documents alone, we review its decision for correctness.

## II. The *Chandler* Test

¶18    Having identified the applicable standard of review, we turn our attention to the merits of Defendants' appeal, which requires our application of the *Chandler* two-part test. As mentioned above, waiver of a right to arbitrate occurs when both parts are met. *See supra* ¶ 11. First, the party seeking arbitration must substantially participate in litigation to a point inconsistent with the right to arbitrate. Second, the party's participation must cause prejudice to the opposing side. *Chandler v. Blue Cross Blue Shield of Utah*, 833 P.2d 356, 360 (Utah 1992).

¶19    We consider first whether the district court erred in concluding that Turpin did not substantially participate in litigation. Next, at Defendants' invitation, we decide in the first instance whether Turpin's participation prejudiced Defendants.

---

6. We note that this court, in *Educators Mutual Insurance Ass'n v. Evans*, cited the standard of review from *Chandler* and its progeny as the applicable standard, even though that decision post-dated *ASC Utah*. *See Educators Mutual Ins. Ass'n v. Evans*, 2011 UT App 171, ¶ 21, 258 P.3d 598. But unlike this case, it does not appear that there was a dispute in *Educators Mutual* about the appropriate standard of review.

A.      Substantial Participation in Litigation

¶20     "This first part of the *Chandler* test looks at the actions of the party seeking arbitration, and whether those actions evidence an intent to submit to the jurisdiction of the court and pursue redress through litigation." *Central Fla. Invs. Inc. v. Parkwest Assocs.*, 2002 UT 3, ¶ 26, 40 P.3d 599. The district court determined that Turpin did not substantially participate in litigation because, it reasoned, she did not engage in significant discovery or file motions with the court. Defendants argue that the district court's focus on the extent of Turpin's post-filing activities was misguided and that Turpin filing the complaint, "by itself," evidenced a clear intent to litigate her dispute and waive her right to arbitrate. We agree.

¶21     Our case law applying the *Chandler* test ordinarily arises in the context of a defendant seeking to arbitrate after having answered a plaintiff's complaint. *See, e.g., Chandler*, 833 P.2d at 360; *Central Fla. Invs.* 2002 UT 3, ¶ 28; *Baker v. Stevens*, 2005 UT 32, ¶¶ 13–15, 114 P.3d 580; *Smile Inc. Asia Pte. Ltd. v. BriteSmile Mgmt.*, 2005 UT App 381, ¶¶ 22–27, 122 P.3d 654. Under those circumstances, courts are called upon to evaluate the defendant's various litigation activities to assess whether the extent of its participation evidences an intent to litigate the dispute. But in *Educators Mutual Insurance Ass'n v. Evans*, this court addressed a different scenario—one in which a *plaintiff* sought to arbitrate its dispute after having filed a complaint. 2011 UT App 171, ¶ 66, 258 P.3d 598. And in that case, the court had no trouble concluding that the first prong of the *Chandler* test was satisfied by the plaintiff's filing of the complaint. *Id.* The court explained, "By filing the complaint, [the plaintiff] plainly evidenced an intent to submit to the jurisdiction of the court and pursue redress through litigation." *Id.* Applying that principle here, Turpin's filing of her complaint likewise evidenced her intent to pursue redress through litigation, thus satisfying the first prong of the *Chandler* test.

¶22    Turpin urges us to reach a different conclusion than that reached in *Educators*, arguing that the court's substantial participation determination "is cursory dictum" and does not set a precedent we must follow. We disagree. Dicta is nonbinding language in a court's opinion that is made "casually and without analysis, where the statement is uttered in passing without due consideration of the alternatives, or where it is merely a prelude to another legal issue that commands the court's full attention." *State v. Robertson*, 2017 UT 27, ¶ 27, 438 P.3d 491 (cleaned up). The statement in *Educators* was not uttered in passing or casually without analysis. The court was called on to specifically address whether the first prong of *Chandler* was met, and the court concluded, without equivocation, that filing the complaint, without more, evidenced an intent to litigate. *Educators*, 2011 UT App 171, ¶ 66. This determination was a key component of the court's analysis on the waiver issue, and we are in no position to disregard it.

¶23    Turpin also suggests that *Educators* is at odds with *Chandler* and its progeny, but we view them as consistent. For example, in *Central Florida Investments,* our supreme court affirmed the district court's determination that the defendant did not substantially participate in litigation, but the supreme court considered it to be a "close call." 2002 UT 3, ¶ 27. The court saw it that way because the defendant had not just answered the complaint, but it had filed a counterclaim and a motion to dismiss before moving to compel arbitration. *Id.* ¶ 28. Thus, the defendant "invoked the authority of the court . . . before filing the motion to compel." *Id.* Still, the court ultimately held that the defendant did not waive its right to arbitrate, deeming it significant that the defendant did not "invoke[]" "the litigation machinery" and that "when it did participate in the litigation process," "it did so reluctantly" and "while communicating an intent to arbitrate." *Id.* ¶ 34. Given the significance attributed to the defendant's reluctance in *Central Florida Investments*—a reluctance that was missing from *Educators*—we do not view *Educators* as antithetical to other precedent.

¶24    Finally, Turpin alternatively asks us to distinguish her case from *Educators*, explaining that she "is not a large insurance company," as was the plaintiff in that case, and that she filed her lawsuit shortly before the statute of limitations expired while changing law firms and fighting cancer. We are sympathetic to Turpin's situation, but we fail to see how these differences are material to the substantial participation prong of the *Chandler* test.[7] The question posed is whether a party's actions evidence an intent to submit to the jurisdiction of the court and pursue one's claims through litigation. Absent some outward indication by Turpin that she was pursuing litigation reluctantly or did not want to waive her right to arbitrate, we see no relevant difference between this case and *Educators*,[8] and we are bound by its precedent. *See State v. Legg*, 2018 UT 12, ¶ 9, 417 P.3d 592 ("Under the doctrine of horizontal stare decisis, the first decision by a court on a particular question of law governs later decisions by the same court." (cleaned up)).

---

7. That Turpin may have been an unsophisticated litigant and may not have recalled signing the arbitration agreement seems relevant to whether she relinquished a "known" right. *See ASC Utah, Inc. v. Wolf Mountain Resorts, LC*, 2010 UT 65, ¶ 26, 245 P.3d 184 (cleaned up) ("A waiver is the intentional relinquishment of a known right. To constitute a waiver, there must be an existing right, benefit or advantage, a knowledge of its existence, and an intention to relinquish it." (cleaned up)). But Turpin conceded knowledge for purposes of this appeal, and she has not otherwise shown how these facts are relevant to the substantial participation question.

8. We note that unlike Turpin, the plaintiff in *Educators* had participated in other litigation activities, including a year of "pleadings and discovery." 2011 UT App 171, ¶ 13. But the court did not view the other activities as material to its analysis. It concluded that filing the complaint was sufficient to satisfy the first prong of *Chandler*. *Id.* ¶ 66.

¶25    In sum, we conclude that the district court erred in deciding that Turpin had not substantially participated in litigation.[9] By invoking the litigation machinery, Turpin evidenced her intent to pursue her medical malpractice claims against Defendants through litigation, thus satisfying the first prong of the *Chandler* two-part test.

B.    Prejudice

¶26    Having determined that Defendants did not satisfy the first prong of the *Chandler* test, the district court declined to reach the second prong, which required Defendants to show that they were prejudiced by Turpin initiating litigation. Aware that they ultimately must prevail on both prongs of the test, Defendants invite us to decide the question of prejudice rather than remand the issue for resolution in the first instance by the district court.

¶27    We accept Defendants' invitation for two reasons. First, Defendants offered no evidence in support of their claims of prejudice, but instead they asked the district court to decide the question based on the docket and counsel's representations. Because this posture presents us with a question of law, we are well suited to decide it. *See ASC Utah, Inc. v. Wolf Mountain Resorts, LC*, 2010 UT 65, ¶ 11, 245 P.3d 184 (holding that "when a district court denies a motion to compel arbitration based on documentary evidence alone, it is a legal conclusion that is reviewed for correctness"). Second, "when reviewing a decision made on one ground, we have the discretion to affirm the judgment on an alternative ground if it is apparent in the record." *Madsen v. Washington Mutual Bank fsb*, 2008 UT 69, ¶ 26, 199 P.3d 898 (cleaned up); *see also Bodell Constr. Co. v. Robbins*, 2009 UT 52, ¶ 26 n.17, 215 P.3d 933 ("To serve judicial economy, we may affirm a district court's decision whenever the decision

---

9. In fairness to the district court, neither party cited the *Educators* case in briefing Turpin's motion to compel arbitration.

appealed from is sustainable on any legal ground or theory apparent on the record." (cleaned up)). In the interest of judicial economy, we exercise that discretion here.

¶28 Because Turpin participated in litigation to a point inconsistent with the intent to arbitrate, "whether waiver has occurred rests solely on a finding of prejudice."[10] *See Chandler*, 833 P.2d at 358–59. "[T]he prejudice must relate to the delay in the assertion of the right to arbitrate," and "the prejudice [must] be of such a nature that the party opposing arbitration suffers some real harm." *Id.* at 360. "[A]ctual prejudice or real harm" may be shown by the party opposing arbitration if it has incurred "significant expenses in the district court litigation that would not have been incurred in arbitration," *Pledger v. Gillespie*, 1999 UT 54, ¶¶ 19, 23, 982 P.2d 572, or if it has participated in discovery "that would not have been available in arbitration," *ASC Utah*, 2010 UT 65, ¶ 35. Finally, "prejudice can occur if a party gains an advantage in arbitration through participation in pretrial procedures." *Chandler*, 833 P.2d at 359. The party opposing arbitration has the burden of proving prejudice. *Central Fla. Invs.*, 2002 UT 3, ¶ 24.

---

10. During oral argument, we asked counsel whether the *Chandler* prejudice prong had been abrogated by *Mounteer Enterprises, Inc. v. Homeowners Ass'n*, 2018 UT 23, 422 P.3d 809. In *Mounteer*, the Utah Supreme Court stated generally that "[t]he prejudice requirement is a doctrinal misfit in the law of waiver," and it thus "repudiate[d] [its] prior decisions that speak of prejudice as an element of waiver." *Id.* ¶¶ 33–34. *Mounteer*, however, was not an arbitration case, and the court did not specifically address whether prejudice remains an element of the *Chandler* test. *Id*. ¶¶ 9–10, 31–34. Because the parties did not raise this issue in the district court or on appeal, we consider it waived and assume for purposes of our review that the prejudice prong still applies in the *Chandler* context. Still, without expressing any opinion on it, we flag the issue for possible exploration in a future case.

¶29 Defendants first contend that they were prejudiced by Turpin's delay in pursuing arbitration because they participated in the DOPL hearing. Defendants claim that they "were required to incur attorney fees preparing for the hearing" and that they lost revenue from having to "take time away from their clinical practices" to attend. Additionally, Defendants claim that Turpin "gained an informational advantage" because there was a "candid discussion" of Defendants' "defenses and medical assessments" during the DOPL hearing.

¶30 We do not share Defendants' view that they have shown actual prejudice arising from their participation in the DOPL hearing. For one thing, Defendants have not shown that the time spent preparing for and attending the DOPL hearing is not time that would have been spent preparing for arbitration. Even if Turpin had immediately asserted her right to arbitrate, Defendants still would have invested time examining the facts of the case and considering their potential defenses. Only generally alleging that they incurred costs preparing for and attending the hearing does not establish that the time was wasted and that they suffered "real harm." *See Chandler*, 833 P.2d at 360.

¶31 Further, even if Defendants incurred some expense to participate in the DOPL hearing that they would not have incurred preparing for arbitration, Defendants have not shown that those expenses were "significant." *See Pledger*, 1999 UT 54, ¶ 23. Defendants bear the burden of proof, and by producing no evidence to substantiate their claims of lost revenue or attorney fees, their generalized representations make it impossible for us to conclude that the expenses incurred were significant.[11]

---

11. There may be instances where the extent of the litigation could suggest, even without detailed proof, that the expenses incurred were significant. For example, in *Smile Inc. Asia Pte. Ltd. v. BriteSmile Management, Inc.*, 2005 UT App 381, 122 P.3d 654, this court affirmed a determination of prejudice based on a

(continued…)

¶32 Similarly, Defendants have not identified any particular information that Turpin gleaned from the DOPL hearing that she would not have learned otherwise or that would give her an unfair advantage in arbitration. Defendants' mere assertion that the discussion was "candid" does not reveal whether Turpin left the hearing with any kind of advantage. And even if we assume that Turpin did learn something unique in the DOPL hearing, any alleged harm is mitigated by the Act because the proceedings are confidential and the evidence of the proceedings and the panel's findings and determinations "are not admissible as evidence in any civil action or arbitration proceeding." *See* Utah Code Ann. § 78B-3-419(1) (LexisNexis 2018); *id.* § 78B-3-417(5)(a). Given those limitations, Defendants must do more to demonstrate actual harm. *See Chandler*, 833 P.2d at 360.

¶33 Next, Defendants argue that their lost "right to conduct discovery under the Utah Rules of Civil Procedure" in arbitration is prejudicial. But that alleged loss[12] is not a harm cognizable under *Chandler*. The *Chandler* court stated that the "prejudice must relate to the delay in the assertion of the right to

---

(…continued)
review of the record that demonstrated that the parties had engaged in "two years of active litigation," including exchanging "significant and extensive discovery" and filing and arguing "numerous motions." *Id.* ¶¶ 35–36. In contrast, the record in this case does not, without more, show that Defendants incurred significant expense.

12. We describe this as an alleged loss because, as Defendants note, Turpin "explicitly stated that she will stipulate [in arbitration] to full discovery under the Utah Rules of Civil Procedure." Defendants concede that they "have no reason to believe that Ms. Turpin or her counsel would renege on this stipulation," and thus Defendants' claim that they will not be able to conduct the same amount of discovery in arbitration is speculative at best.

arbitrate." *Id.* This alleged harm is not related to Turpin's *delay*; the alleged harm would exist regardless of when Turpin demanded arbitration. Thus, alleged prejudice of this kind does not support a determination of waiver.

¶34 Lastly, Defendants argue that they have been prejudiced by Turpin's delay in compelling arbitration because they "have already devoted extensive briefing to the question of whether Ms. Turpin filed her complaint outside of the statute of repose."[13] Defendants assert that they "likely" would not have briefed this issue if the claim had proceeded directly to arbitration, but they acknowledge that they would have raised it as a legal defense in arbitration. Once again, Defendants have not shown actual harm. Where they admit that they would have raised this issue in arbitration, and may have even briefed it, any claims of prejudice are speculative and inadequate to meet their burden of showing actual harm. And even if the costs Defendants incurred to brief their district court motion would exceed the costs they would have expended in arbitration, Defendants have not demonstrated that the difference is in any way "significant." *See Pledger*, 1999 UT 54, ¶ 23.

¶35 In sum, Defendants bear the burden of proving that they suffered "real" and "actual" prejudice resulting from Turpin's six-month delay in asserting her right to arbitrate. *See Chandler*, 833 P.2d at 360; *Pledger*, 1999 UT 54, ¶ 19. Defendants have generally identified one or two activities in which they may or may not have participated had Turpin immediately proceeded to arbitration. Without more, Defendants have not established that

---

13. Defendants also argue that they will be prejudiced because arbitration limits certain options, such as the ability to appeal. But like their discovery argument, this argument is unavailing. A limitation on the ability to appeal an arbitration award is not a cognizable prejudice under *Chandler* because it does not relate to Turpin's *delay* in initiating arbitration. *Chandler*, 833 P.2d at 360.

they have suffered actual harm as a result of the delay, and thus the *Chandler* prejudice prong has not been met.

CONCLUSION

¶36    Turpin showed her intent to submit to the jurisdiction of the court and pursue redress through litigation by filing a complaint against Defendants in district court. But Defendants have not shown that they were prejudiced as a result. Thus, Defendants have not satisfied both prongs of the *Chandler* test and we therefore affirm on this alternative ground the district court's order compelling arbitration.

———————