**2022 UT App 71**

## THE UTAH COURT OF APPEALS

BRENT LIVINGSTON AND THE ESTATE OF VERNOLD LIVINGSTON,
Appellants,
*v.*
FINCO HOLDINGS CORP., CHICO'S AUTO SALES INC., CIELO OSORIO,
BILL KISHTON, MILTON RODRIGUEZ, AND OMAR BOLANOS,
Appellees.

Opinion
No. 20200200-CA
Filed June 9, 2022

Third District Court, Salt Lake Department
The Honorable Richard D. McKelvie
No. 150901881

Ronald Ady, Attorney for Appellants

Joseph A. Skinner and Morgan I. Marcus, Attorneys
for Appellees Finco Holdings Corp., Cielo Osorio,
and Bill Kishton

JUDGE JILL M. POHLMAN authored this Opinion, in which JUDGES
GREGORY K. ORME and RYAN M. HARRIS concurred.

POHLMAN, Judge:

¶1      To finance the purchase of a vehicle, Brent and Vernold Livingston entered into a consumer loan agreement with Finco Holdings Corp. dba The Equitable Finance Company (Lender). As part of the transaction, the Livingstons agreed to arbitrate any disputes they may have with Lender and related parties. After the Livingstons allegedly defaulted on their loan, Lender repossessed the vehicle, sold it, and remitted the excess proceeds of the sale to the Livingstons.

¶2      Based on their claim that they were current on the loan and were wrongfully denied the opportunity to redeem the vehicle,

the Livingstons filed suit against, among others, Lender and certain of its employees (collectively, Lender Defendants).[1] More than fifteen months later, Lender Defendants moved to compel arbitration pursuant to the parties' agreement. The district court granted the motion, and following arbitration, judgment was entered in Lender Defendants' favor.

¶3 The Livingstons appeal, arguing that the court erred in compelling arbitration. First, the Livingstons contend that Lender did not manifest its agreement to arbitrate and thus no binding agreement was formed. Second, the Livingstons assert that Lender Defendants waived their right to arbitrate by substantially participating in litigation and that the Livingstons were prejudiced as a result. Because we agree with the district court that the parties entered into an enforceable arbitration agreement and that the Livingstons have not shown that they were prejudiced by Lender Defendants' delay in compelling arbitration, we affirm.

## BACKGROUND[2]

¶4 In November 2013, the Livingstons purchased a vehicle from a dealership. To facilitate their purchase, the Livingstons

---

1. The Livingstons named Lender and its employees Cielo Osorio, Bill Kishton, and Brent Robinson as defendants, as well as Chico's Auto Sales Inc. and its employees Milton Rodriguez and Omar Bolanos. Brent Robinson passed away while the litigation was pending. Defendants Chico's Auto Sales, Rodriguez, and Bolanos have not participated in this appeal.

2. In ruling on Lender Defendants' motion to compel arbitration, the district court made few factual findings, and most of the relevant facts are undisputed procedural facts. For the limited purpose of providing context for this appeal, we recite some

(continued…)

sought financing from Lender. As part of the loan transaction, the Livingstons signed several documents, including the consumer loan agreement and a separate arbitration rider.

¶5 The arbitration rider, which by its terms "is incorporated into and becomes a part of every application, purchase, finance and lease document and other contracts," provides: "If a Dispute (defined below) arises between you and us that you and we cannot resolve, you or we may elect to arbitrate the Dispute under this Binding Arbitration Clause ('Clause') rather than litigate the Dispute in court." In the definitional section of the rider, it defines "Dispute" as "any dispute, claim or controversy between you and us that accrues before or after the date of this Clause," and includes "any dispute . . . concerning the validity, enforceability and scope of this Clause." It also defines "we" and "us" as "the creditor signing below," as well as the creditor's agents and related companies, and it defines "you" as "the applicant(s) signing below." However, the arbitration rider does not contain a signature block for the creditor. Instead, it contains only a signature block for the borrower and states, "I agree to the terms of this Clause and acknowledge receipt of a completed copy of this Clause."

¶6 Lender provided the Livingstons with the loan on the condition that the loan agreement and the arbitration rider "be signed." Accordingly, the Livingstons signed both documents,[3]

---

additional undisputed facts as they are alleged in the Livingstons' complaint or as they are offered in support of or in opposition to the motion to compel.

3. Before the district court, the Livingstons disputed that they signed the arbitration rider, but after discovery and an evidentiary hearing that included expert testimony, the district court found otherwise. It found that the Livingstons "signed the arbitration rider to the loan agreement at issue . . . ; that the

(continued…)

and the loan was financed. Lender, who signed the loan agreement, received the executed rider from the Livingstons and retained it as part of its records relating to the loan.[4]

¶7 A few months later, based on its belief that the Livingstons had defaulted on the loan, Lender repossessed and sold the vehicle. Alleging, among other things, that the repossession was unlawful, the Livingstons filed a lawsuit against Lender Defendants and others. Lender Defendants responded with a motion to dismiss, seeking a dismissal of certain of the Livingstons' ten causes of action. Nearly ten months after the case was filed, the district court granted the motion to dismiss in part, and the Livingstons sought leave to amend their complaint. However, before their motion for leave to amend was granted, Lender Defendants removed the case to federal court based on the Livingstons' assertion of a federal claim in their draft amended complaint. Because the removal was premature, the federal court remanded the case to state court and awarded the Livingstons the attorney fees they incurred in challenging the removal. A month later, the motion for leave to amend was granted (with the federal claim removed), and the next day, Lender Defendants moved to compel arbitration based on the arbitration rider.

¶8 The Livingstons opposed Lender Defendants' motion, arguing that arbitration could not be compelled because "an arbitration contract was never formed." In the alternative, the Livingstons argued that Lender Defendants had waived their right to arbitrate by substantially participating in litigation to a point inconsistent with the right to arbitrate and that the

---

signatures contained thereon are genuine and are not forgeries." This finding is not challenged on appeal.

4. Lender eventually signed the rider, but the Livingstons contend that it was not signed contemporaneously with the loan agreement. They contend that Lender did not sign the rider until after the litigation began.

Livingstons were prejudiced by Lender Defendants' delay in seeking arbitration. The district court disagreed and ordered the case to arbitration. It concluded that the arbitration rider was an enforceable contract and that Lender Defendants did not waive their right to arbitrate. Specifically, the court determined that Lender Defendants did not act inconsistently with the right to arbitrate and that the Livingstons failed to show that the delay prejudiced them. The arbitration proceeding resulted in an award for Lender Defendants, which the district court confirmed. The Livingstons appeal.

## ISSUES AND STANDARD OF REVIEW

¶9     The Livingstons contend that the district court erred in granting Lender Defendants' motion to compel arbitration for two reasons.

¶10     First, the Livingstons assert that a binding arbitration agreement was never formed. "The issue of whether a contract exists may present questions of both law and fact. Whether a contract has been formed is ultimately a conclusion of law, but that ordinarily depends on the resolution of subsidiary issues of fact." *Nunley v. Westates Casing Services, Inc.*, 1999 UT 100, ¶ 17, 989 P.2d 1077. Here, the relevant facts are not in dispute and both parties invite us to review the court's decision for correctness.

¶11     Second, the Livingstons argue that Lender Defendants waived their right to arbitrate by substantially participating in litigation, which prejudiced the Livingstons. The parties agree that the district court's determination regarding waiver of the right to arbitrate presents a mixed question of law and fact. Quoting *Central Florida Investments, Inc. v. Parkwest Associates*, 2002 UT 3, 40 P.3d 599, the parties argue that "a legal question . . . is reviewed for correctness, but the actions or events allegedly supporting waiver are factual in nature and should be reviewed as factual determinations, to which we give a district court deference." *Id.* ¶ 20. However, when a district court's

determination to compel or deny arbitration is "based on documentary evidence alone, it is a legal conclusion that is reviewed for correctness." *ASC Utah, Inc. v. Wolf Mountain Resorts, LC*, 2010 UT 65, ¶ 11, 245 P.3d 184; *see also Turpin v. Valley Obstetrics & Gynecology*, 2021 UT App 12, ¶¶ 15–17, 482 P.3d 831. Here, because the district court's waiver determination was made based on documentary evidence alone, we review its decision for correctness. *See ASC Utah*, 2010 UT 65, ¶ 11.

ANALYSIS

I. Enforceability of the Arbitration Rider

¶12    The Livingstons contend that the district court erred in compelling arbitration of their dispute with Lender Defendants because, they argue, the parties never entered into a binding agreement to arbitrate. In making this argument, the Livingstons repeatedly acknowledge that they signed the arbitration rider as part of the transaction with Lender to finance the purchase of their vehicle. Still, the Livingstons claim that Lender did not timely manifest its assent to the arbitration rider—either by signature or otherwise—and thus no agreement to arbitrate was reached and the rider is unenforceable. We disagree with the Livingstons and conclude that the district court correctly determined that the rider was enforceable and that, absent a waiver, *see infra* Part II, arbitration was appropriately compelled.

¶13    The arbitration rider states that the Federal Arbitration Act (the FAA), "not state arbitration law," governs the arbitrability of the parties' disputes. By its terms, that includes any dispute concerning the enforceability of the arbitration rider. But in interpreting the FAA, the United States Supreme Court has held that when the enforceability of an arbitration agreement is at issue, state-law principles of contract formation generally apply. *See Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987) (citing 9 U.S.C. § 2); *see also First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("When deciding whether the parties agreed to arbitrate a certain

matter . . . , courts generally . . . should apply ordinary state-law principles that govern the formation of contracts."); *Ellsworth v. American Arb. Ass'n*, 2006 UT 77, ¶ 14, 148 P.3d 983 ("Arbitration is a matter of contract law, and state-law principles of contract formation apply." (citation omitted)); *Cade v. Zions First Nat'l Bank*, 956 P.2d 1073, 1077 (Utah Ct. App. 1998) (explaining that even though enforcement of an agreement was governed by the FAA, state contract law applied to the issue of whether and who may enforce the agreement). Thus, in considering the Livingstons' challenge to the enforceability of the arbitration rider, we apply principles of Utah contract law.

¶14    "[I]t is a basic principle of contract law that there can be no contract without the mutual assent of the parties." *John Call Eng'g, Inc. v. Manti City Corp.*, 743 P.2d 1205, 1207 (Utah 1987); *see also Rossi v. University of Utah*, 2021 UT 43, ¶ 31, 496 P.3d 105 ("Generally, a promise is legally enforceable where it is part of a bargain in which there is a manifestation of mutual assent to the exchange and a consideration." (cleaned up)). A contract results when "there is a manifestation of mutual assent, by words or actions or both, which reasonably are interpretable as indicating an intention to make a bargain with certain terms or terms which reasonably may be made certain." *Rapp v. Salt Lake City*, 527 P.2d 651, 654 (Utah 1974) (cleaned up).

¶15    The Livingstons contend that there is no enforceable agreement to arbitrate because Lender did not timely manifest its assent to the arbitration rider. Specifically, the Livingstons argue that the rider "explicitly requir[ed]" Lender to manifest its assent by signing the rider, and that without a timely signature, "there was no binding arbitration agreement."[5] Alternatively, the

---

5. Although it is undisputed that Lender eventually signed the arbitration rider, the Livingstons contend that it was not signed until after litigation was commenced. Because we ultimately conclude that a signature was not necessary to manifest Lender's

(continued…)

Livingstons contend that even if Lender's timely signature was not required, Lender did not otherwise manifest its assent in a timely way. We disagree with the Livingstons on both counts.

¶16   First, the arbitration rider did not require Lender's signature, and thus its absence does not render the rider unenforceable. Under standard contract principles, it is established that "the purpose of a signature is to demonstrate mutuality of assent." *Commercial Union Assocs. v. Clayton*, 863 P.2d 29, 34 (Utah Ct. App. 1993) (cleaned up). But it is equally established "that a signature is not always necessary to create a binding agreement." *Id.* (cleaned up). As our supreme court has stated, "it is fundamental contract law that the parties may become bound by the terms of a contract even though they did not sign the contract, where they have otherwise indicated their acceptance of the contract, or led the other party to so believe that they have accepted the contract." *Ercanbrack v. Crandall-Walker Motor Co.*, 550 P.2d 723, 725 (Utah 1976) (cleaned up). Further, neither the Utah Uniform Arbitration Act nor the FAA requires a party's signature on an arbitration agreement for it to be enforceable; instead, they require only that the agreement be in writing. *See Createrra, Inc. v. Sundial, LC*, 2013 UT App 141, ¶¶ 8, 12, 304 P.3d 104 (recognizing the Utah statutory requirement that an arbitration agreement be in writing); *Medical Dev. Corp. v. Industrial Molding Corp.*, 479 F.2d 345, 348 (10th Cir. 1973) (observing that the FAA does not require that a party sign an arbitration agreement; "[a]ll that is required is that the arbitration provision be in writing").

¶17   The Livingstons do not dispute these general principles; they instead contend that the arbitration rider, by its own terms, requires Lender's signature as a condition precedent to the formation of a valid contract. In support of their contention, the Livingstons cite the definitional paragraph of the arbitration rider,

---

agreement to arbitrate, we need not address the Livingstons' complaint that the signature was untimely.

which states: "As used in this Clause, 'we' and 'us' means the creditor signing below, its officers, directors, employees and agents, parents, subsidiaries and affiliated companies and their assigns and respective successors-in-interest. 'You' means the applicant(s) signing below." The Livingstons contend that by defining the "we" and "us" as "the creditor signing below," the arbitration rider "requires" Lender's signature "before a binding agreement was formed." We do not share the Livingstons' view.

¶18    In Utah, "[a] simple statement . . . in a contract is not necessarily a condition to a party's duty of performance. The intention to create a condition in a contract must appear expressly or by clear implication." *Cheever v. Schramm*, 577 P.2d 951, 953 (Utah 1978). And although the language cited by the Livingstons suggests that Lender would sign the arbitration rider, the language does not expressly state or clearly imply that Lender's signature was a condition precedent to the enforceability of the rider or was the only method by which Lender could manifest its assent. The purpose of the signature, as expressly set forth in the rider, was to identify the creditor by name. The rider does not expressly state or clearly imply that the signature was a prerequisite to a binding agreement.

¶19    This result is consistent with conclusions reached by other courts considering similar arguments applying like principles of contract law. For example, the United States Court of Appeals for the Fifth Circuit concluded that the absence of a signature did not invalidate an arbitration agreement because there was no express language in the parties' agreements stating that they would be bound only if the agreements were signed. *Trujillo v. Volt Mgmt. Co.*, 846 F. App'x 233, 236 (5th Cir. 2021) (per curiam). The court reached its conclusion despite the presence of a signature block in the agreement, stating "there is no language that the parties needed to sign the agreements to give it effect." *Id.* Similarly, the federal district court in Colorado rejected the argument that an arbitration agreement must be signed by the

parties to become effective because the agreement did not use conditional language that required the signatures of the parties to become effective. *Hickerson v. Pool Corp.*, No. 19-cv-02229-CMA-STV, 2020 WL 5016938, at *4 (D. Colo. Aug. 25, 2020). The court concluded that the reference to signatures in the agreement suggested that assent could be manifested by signature, but the reference did not *require* a signature for the agreement to take effect. *Id.*

¶20    Like the contracts in these cases, the arbitration rider here did not state that signatures were required for the agreement to be enforceable. In fact, the rider did not even contain a signature block for Lender. And although the rider suggested that Lender would be identified by its signature, because the rider did not require that it be signed, the absence of Lender's signature did not render the agreement unenforceable.

¶21    Second, we disagree with the Livingstons' alternative argument that even if Lender's signature was not required, the arbitration rider is unenforceable because Lender did not otherwise manifest its assent to the rider. Contrary to the Livingstons' claim, Lender manifested its assent in multiple ways. As the district court found, Lender presented the arbitration rider to the Livingstons and required its execution by the Livingstons before the loan would be funded. Further, Lender signed the loan agreement on the same date the arbitration rider was presented to and signed by the Livingstons. The arbitration rider expressly states that it "is incorporated into and becomes part of every application, purchase, finance and lease document and other contracts . . . entered into between" Lender and the Livingstons, and the district court concluded that the two documents should be construed as a whole. Thus, Lender's signature on the loan agreement was an additional manifestation of its assent to the arbitration rider. And finally, Lender funded the loan that was conditioned on the Livingstons agreeing to arbitration, it maintained the arbitration rider in its files, and it sought to enforce the arbitration rider.

¶22    Together, these actions manifest Lender's assent to the rider, and the Livingstons presented no evidence beyond the absence of a signature to suggest a contrary intent. *See Dickson v. Gospel for ASIA, Inc.*, 902 F.3d 831, 835 (8th Cir. 2018) ("We have no doubt that GFA assented to the agreements at issue and intended them to be enforceable: GFA drafted the agreements and affixed its letterhead to them; it maintained the agreements; and it seeks to enforce them."); *Hickerson*, 2020 WL 5016938, at *6 ("Pool also manifested its assent in numerous ways; it drafted the Agreements, presented them to Plaintiffs for signature . . . , included reference to the Agreements in the Employee Handbook, had Plaintiffs sign an acknowledgement that they received and read the Employee Handbook, and continued to employ Plaintiffs after they signed the Agreements."); *Wright v. Hernandez*, 469 S.W.3d 744, 761 (Tex. App. 2015) (concluding that the employer manifested its assent to an unsigned arbitration agreement by preparing the agreement, presenting the agreement to the employee for signature, maintaining the agreement as a business record, and seeking to enforce the agreement). Thus, we have no trouble concluding, as did the district court, that Lender manifested to the Livingstons that it agreed to the arbitration rider and was therefore bound. And having resolved this issue in favor of Lender, we likewise conclude that the district court did not err in concluding that a binding arbitration agreement existed between the Livingstons and Lender Defendants.

## II. Waiver

¶23    The Livingstons next challenge the district court's determination that Lender Defendants did not waive their right to arbitrate the Livingstons' dispute. The Livingstons contend that the court committed legal error in applying federal law to the waiver inquiry and that the court incorrectly concluded that Lender Defendants did not waive their right to arbitrate. We begin by addressing the legal standard for waiver of the right to arbitrate. We then address whether the district court correctly concluded that Lender Defendants did not waive their right to

arbitrate because the Livingstons were not prejudiced by Lender Defendants' delay.

A.     The Legal Standard

¶24     As noted above, the parties' arbitration rider states that the FAA governs the arbitrability of the parties' disputes, including any dispute concerning the rider's enforceability. *See supra* ¶ 13. Relying on that choice of law provision, Lender Defendants invited the district court to apply federal law in assessing the Livingstons' contention that Lender Defendants had waived their right to arbitrate by participating in litigation for a time before seeking to compel arbitration. Accepting Lender Defendants' invitation, the court considered the factors relevant to the question of waiver that were summarized by the Tenth Circuit Court of Appeals in *Peterson v. Shearson/American Express, Inc.*, 849 F.2d 464, 467–68 (10th Cir. 1988). Specifically, the court considered "whether the litigation machinery ha[d] been substantially invoked," whether Lender Defendants' "actions [we]re inconsistent with the right to arbitrate," and whether Lender Defendants had "tak[en] advantage of judicial discovery procedures not available in arbitration." *See id.* (cleaned up). The court also considered whether the delay in demanding arbitration "affected, misled, or prejudiced" the Livingstons.[6] *See id.* at 468 (cleaned up).

¶25     The Livingstons contend that even though the arbitration rider is governed by federal law, the question of waiver is

---

6. Consistent with Tenth Circuit authority, the district court also considered whether "the parties were well into preparation of a lawsuit" before Lender Defendants notified the Livingstons of their intent to arbitrate, whether Lender Defendants had filed a counterclaim, and whether Lender Defendants' arbitration request came "close to the trial date" or was "delayed for a long

(continued…)

governed by the two-part waiver test first articulated by the Utah Supreme Court in *Chandler v. Blue Cross Blue Shield of Utah*, 833 P.2d 356, 360 (Utah 1992). There, the court stated, "[W]aiver of a right of arbitration must be based on both a finding of participation in litigation to a point inconsistent with the intent to arbitrate and a finding of prejudice."[7] *Id.* The Livingstons contend that "the Utah Supreme Court can independently develop its own case precedent . . . in construing federal arbitration law" and that the *Chandler* standard "is fully compliant" with United States Supreme Court authority. Ultimately, we need not resolve whether the district court erred in applying the factors identified by the Tenth Circuit in *Peterson* rather than the waiver test as articulated by our supreme court in *Chandler*. Had the court applied the *Chandler* test, the result would have been the same.

¶26   Under *Chandler*, "waiver of a right of arbitration must be based on *both* a finding of participation in litigation to a point inconsistent with the intent to arbitrate *and* a finding of prejudice." *Id.* (emphasis added). Thus, if either prong is unmet, there is no waiver.

¶27   Here, in its application of the *Peterson* standard, the district court considered and ultimately determined that the Livingstons

---

period" of time. *See Peterson v. Shearson/Am. Express, Inc.*, 849 F.2d 464, 467–68 (10th Cir. 1988) (cleaned up).

7. In *Mounteer Enterprises, Inc. v. Homeowners Ass'n*, 2018 UT 23, 422 P.3d 809, a non-arbitration case, the Utah Supreme Court observed that "[t]he prejudice requirement is a doctrinal misfit in the law of waiver," and it thus "repudiate[d] [its] prior decisions that speak of prejudice as an element of waiver." *Id.* ¶¶ 33–34. *Mounteer* was decided after the district court entered its decision in this case and neither side has argued that prejudice is no longer an element of the *Chandler* waiver test. Accordingly, we assume for purposes of our review in this case that the prejudice prong still applies.

did not show that Lender Defendants' delay in seeking arbitration prejudiced them. Because that determination of no prejudice would have been fatal to the Livingstons' waiver claim under *Chandler*, the Livingstons would have fared no better had that standard been applied.

B.      The Livingstons' Claim of Prejudice

¶28     The Livingstons next contend that the district court erred in concluding that they had failed to demonstrate that Lender Defendants' delay in seeking arbitration prejudiced them. We are not persuaded.

¶29     As the parties opposing arbitration, the Livingstons bore the burden of proving prejudice. *See Turpin v. Valley Obstetrics & Gynecology*, 2021 UT App 12, ¶ 28, 482 P.3d 831. To be material, "prejudice must result from the delay in the assertion of the right to arbitrate, not from factors that are inherent in arbitration itself, such as the severance of a claim or limitations on remedies." *Chandler v. Blue Cross Blue Shield of Utah*, 833 P.2d 356, 359 (Utah 1992). Further, "prejudice [must] be of such a nature that the party opposing arbitration suffers some real harm," *id.* at 360, which may be shown if that party "has incurred significant expenses in the district court litigation that would not have been incurred in arbitration, or if it has participated in discovery that would not have been available in arbitration," *Turpin*, 2021 UT App 12, ¶ 28 (cleaned up). Additionally, "prejudice can occur if a party gains an advantage in arbitration through participation in pretrial procedures." *Chandler*, 833 P.2d at 359.

¶30     Here, the Livingstons identify three possible sources of prejudice, but none of the three satisfy the *Chandler* standard.

¶31     First, the Livingstons contend that they were prejudiced by having to respond to Lender Defendants' motion to dismiss certain claims that were filed early in the litigation. The Livingstons claim they suffered prejudice because they incurred "substantial litigation expense" and several of their claims were

dismissed. This argument is not persuasive. The Livingstons conceded in oral argument before this court that they would have had to litigate the same issues in arbitration and that Lender Defendants could have received the same relief. Relatedly, the Livingstons have not identified any expense incurred in the litigation that they would not have incurred in defending a motion to dismiss filed in arbitration. Thus, the Livingstons have not demonstrated actual harm. Because the Livingstons would have had to defend against the same motion in arbitration that they faced in litigation, they have not shown that they were prejudiced by the litigation of the motion in the district court. *See Turpin*, 2021 UT App 12, ¶ 28; *see also Pledger v. Gillespie*, 1999 UT 54, ¶ 23, 982 P.2d 572 (considering whether the party opposing arbitration incurred significant litigation expenses "that would not have been incurred in arbitration").

¶32 Second, the Livingstons argue that they were "greatly prejudiced" by the expenses they incurred in litigating Lender Defendants' failed removal of the lawsuit to federal court. Again, we do not agree. Not only did the Livingstons neglect to provide any evidence to the district court to demonstrate that they incurred "significant expenses" defending against the removal sufficient to establish prejudice under the *Chandler* standard, *see Turpin*, 2021 UT App 12, ¶ 28, they conceded in oral argument before this court that the federal court awarded them the attorney fees they incurred when it rejected the removal as improper. Thus, the Livingstons cannot show that they were prejudiced by having to defend against Lender Defendants' removal.

¶33 Finally, the Livingstons contend that they were prejudiced by Lender Defendants' forum shopping. They argue that Lender Defendants "tested the judicial waters in state court," and when it was not to their "liking," they "engaged in forum shopping by attempting to remove" the Livingstons' claims to federal court. The Livingstons are correct that "prejudice exists when the party seeking arbitration is attempting to forum-shop after the judicial waters have been tested." *See Chandler*, 833 P.2d at 359 (cleaned

up). But the Livingstons have not shown prejudice on this record. They have not identified an adverse ruling in state court from which Lender Defendants appeared to be fleeing. Instead, Lender Defendants had success before the state court on their motion to dismiss and they understandably sought to remove the case to federal court after the Livingstons indicated that they intended to assert a federal claim. Without more, there is no suggestion that in moving to compel arbitration, Lender Defendants were "sensing an adverse court decision" and by compelling arbitration were trying to gain "a second chance in another forum." *See Jones Motor Co. v. Chauffeurs, Teamsters & Helpers Local Union No. 633*, 671 F.2d 38, 43 (1st Cir. 1982).

¶34    In sum, the district court correctly concluded that the Livingstons did not demonstrate that they were prejudiced by Lender Defendants' delay in compelling arbitration. Accordingly, the district court did not err in concluding that Lender Defendants did not waive their right to arbitrate.

### III. Attorney Fees

¶35    Lender Defendants seek an award of attorney fees incurred on appeal pursuant to paragraph 3(d) of the loan agreement, the arbitration rider, and rule 33 of the Utah Rules of Appellate Procedure. We decline to consider this request because it was inadequately briefed. *See Anderson v. Taylor*, 2006 UT 79, ¶ 25, 149 P.3d 352 ("Our rules require not just bald citation to authority but development of that authority and reasoned analysis based on that authority." (cleaned up)); *see also* Utah R. App. P. 24(a)(9) ("A party seeking attorney fees for work performed on appeal must state the request explicitly and set forth the legal basis for an award."). Lender Defendants identify several sources for their claimed right to attorney fees, but they fail to engage in any analysis or provide any explanation for why they are entitled to recover the fees they have incurred on appeal. Lender Defendants have not claimed that this appeal is "either frivolous or for delay," as required for an award under rule 33. *See* Utah R. App. P. 33(a)

("[I]f the court determines that a[n] . . . appeal taken under these rules is either frivolous or for delay, it will award just damages, which may include . . . reasonable attorney fees, to the prevailing party."). Similarly, Lender Defendants have not identified a provision in the arbitration rider that entitles them to a fee award, nor have they undertaken any effort to show that their defense of this appeal is an enforcement of the loan agreement as required by paragraph 3(d) of that agreement. Accordingly, Lender Defendants' fee request is denied.

## CONCLUSION

¶36 The district court did not err in concluding that a binding arbitration agreement existed between Lender and the Livingstons. Nor did the court err in determining that Lender Defendants did not waive their right to arbitrate. Although the Livingstons proffer that Lender Defendants waived their right to arbitrate, the Livingstons have not shown that they were prejudiced by the delay. Thus, we affirm the district court's order compelling arbitration.

---