*This opinion is subject to revision before final publication in the Pacific Reporter*
**2018 UT 23**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

MOUNTEER ENTERPRISES, INC.,
*Appellee,*

*v.*

HOMEOWNERS ASSOCIATION FOR THE COLONY AT WHITE PINE CANYON,
*Appellant.*

No. 20170165
Filed June 5, 2018

On Direct Appeal

Third District, Summit County
The Honorable Kara Pettit
No. 110500200

Attorneys:

Joseph E. Wrona, Jared C. Bowman, Park City, for appellee

Troy L. Booher, Beth E. Kennedy, Salt Lake City, for appellant

ASSOCIATE CHIEF JUSTICE LEE authored the opinion of the Court, in which CHIEF JUSTICE DURRANT, JUSTICE HIMONAS, JUSTICE PEARCE, and JUSTICE PETERSEN joined.

ASSOCIATE CHIEF JUSTICE LEE, opinion of the Court:

¶1 The Homeowners Association for the Colony at White Pine Canyon (HOA) hired Mounteer Enterprises, Inc. to provide snow removal services. The contract required Mounteer to maintain a certain amount of insurance coverage. And when the HOA discovered that Mounteer had failed to purchase the required insurance, the HOA terminated the contract.

¶2 Mounteer filed suit, asserting that the HOA had waived its right to terminate the contract on that ground. It reasoned that the HOA had effectively waived the insurance requirement by accepting Mounteer's certificates of insurance and by making payments to Mounteer despite its noncompliance. The HOA responded by

pointing to an antiwaiver clause in the contract—a provision stating that the HOA's failure to notice a deficiency in Mounteer's insurance coverage cannot be construed as a waiver of the insurance provision.

¶3      The HOA moved for summary judgment on the antiwaiver issue and moved to exclude evidence relating to a previous contract between the parties. The district court denied both motions and a subsequent motion for judgment notwithstanding the verdict.

¶4      We reverse the district court's denial of the HOA's motion for judgment notwithstanding the verdict. We hold that a party may implicitly waive an antiwaiver provision through conduct, but there must be clear intent to waive both the underlying provision and the antiwaiver provision. And we conclude that the HOA's failure to insist on performance of the insurance provision here does not establish such clear intent.

I

¶5      In 2006, the Homeowners Association for the Colony at White Pine Canyon entered into a four-year contract with Mounteer Enterprises, Inc. for snow removal services at its development in Park City, Utah. The contract required Mounteer to maintain $7 million of aggregate liability insurance with (1) a general liability policy for $1 million per occurrence and $5 million in the aggregate and (2) an umbrella policy for $1 million per occurrence and $2 million in the aggregate.

¶6      The contract provided that if Mounteer failed to purchase the necessary insurance the HOA could immediately terminate the contract, withhold payments until Mounteer cured the default, or purchase the required insurance and deduct the premiums from payments due to Mounteer. The contract also contained an antiwaiver provision. That provision stated that "[f]ailure of the [HOA] to demand such certificate or other evidence of full compliance with these insurance requirements or failure of the [HOA] to identify a deficiency in the form that is provided shall not be construed as a waiver of Mounteer's obligation to maintain such insurance."

¶7      During the four-year contract ending in November 2010 Mounteer submitted four insurance certificates to the HOA. Each certificate showed only $5 million of aggregate liability insurance coverage. And the HOA paid Mounteer for its services despite this deficiency. In 2010 the two parties entered into a new four-year contract with substantially similar terms, including identical

insurance requirements and antiwaiver provision. The major difference between the contracts was a reduction in the mileage Mounteer would be servicing, as the HOA gave part of its snow removal business to another company.

¶8      Three months into the 2010 contract, the HOA asked Mounteer to surrender over three miles of the roadway Mounteer was contracted to service. When Mounteer refused, the HOA told Mounteer that it planned to find a way to terminate the contract. The HOA then terminated the contract after finding that Mounteer had purchased only $5 million of insurance coverage.

¶9      Mounteer sued for breach of contract and breach of the implied covenant of good faith and fair dealing. It asserted that the HOA had implicitly waived its right to require strict compliance with the insurance provision when the HOA approved the certificates of insurance and paid Mounteer every billing cycle. And it claimed that this conduct was enough to overcome the existence of the antiwaiver provision.

¶10      The HOA moved for summary judgment. It argued that it had not waived the insurance requirement by its conduct because the antiwaiver provision expressly foreclosed a finding of such waiver. The HOA also filed a motion in limine, seeking to exclude evidence that Mounteer had purchased $5 million of aggregate liability insurance every year from 2006 to 2010 and had submitted certificates of insurance to that effect.

¶11      The district court denied both motions. It first held that the HOA's "pattern of inaction from 2006 to 2011" was relevant to show "an intent to relinquish the right to demand strict compliance with the insurance provisions." It also held that "[i]t is within the jury's power to find that [an antiwaiver] provision was itself waived or modified by the parties' agreement or conduct." (Internal quotation marks omitted). And it accordingly instructed the jury that "[t]he existence of an anti-waiver provision is merely one factor to consider in determining whether a party has waived its right under the agreement, and a no-waiver provision can itself be waived."

¶12      The jury found the HOA liable for breach of contract and awarded Mounteer $578,000 in damages. The district court then awarded Mounteer attorney fees and costs as the prevailing party.

¶13      The HOA filed this appeal. It challenges the district court's denial of its motion for judgment notwithstanding the verdict, a question we review for correctness. *See USA Power, LLC v.*

*PacifiCorp*, 2016 UT 20, ¶ 29, 372 P.3d 629. It also appeals the denial of its motion in limine.

II

¶14      We reverse the district court's denial of the motion for judgment notwithstanding the verdict without reaching the HOA's motion in limine argument. We find that the HOA did not waive its right to require $7 million in insurance coverage and to terminate the contract immediately upon default.

¶15      We conclude first that Mounteer must establish a clear waiver of both the insurance provision and the antiwaiver provision. We accept that conduct alone can impliedly waive a contractual provision even with the existence of an antiwaiver provision; but we hold that such conduct must evidence an intentional relinquishment of the party's contractual rights. And we conclude that the mere failure to enforce the underlying contractual provision does not rise to this level. We turn second to the question whether Mounteer must show proof of prejudice to prevail on its waiver claim. And we conclude that prejudice is not an element of waiver.

A

¶16      The contract between the parties clearly states that the HOA could terminate the contract in the event Mounteer failed to purchase $7 million of aggregate liability insurance. Mounteer looks for a way around this language by an appeal to the doctrine of waiver. This doctrine looks to the conduct or communication of the parties to determine whether the HOA waived its right to insist on performance under the contract.

¶17      Courts do not lightly consider a contract provision waived, however. A party may establish waiver only where there is an "intentional relinquishment of a known right." *Wilson v. IHC Hosps., Inc.*, 2012 UT 43, ¶ 61, 289 P.3d 369 (citation omitted). Such waiver can be express or implied. *Id.* ¶ 62. And though waiver may be implied, the party asserting implied waiver must establish that the other party "intentionally act[ed] in a manner inconsistent with its contractual rights . . . ." *Meadow Valley Contractors, Inc. v. State Dep't. of Transp.*, 2011 UT 35, ¶ 45, 266 P.3d 671 (citation omitted).

¶18      So if the otherwise-breaching party can show that the other party intentionally waived its rights under the contract, noncompliance with the relevant provision will not be construed as a breach. This is because a waiver of a contract provision is itself a modification of the agreement between the parties, and when

established should have as much binding power as the contract itself. Thus, waiver prevents a "waiving party from lulling the other party into a belief that strict compliance with a contractual duty will not be required" and then enforcing its contractual rights upon default. 13 WILLISTON ON CONTRACTS § 39:15 (4th ed. 2018).

¶19     The calculus changes, however, when a contract also contains an antiwaiver provision. Antiwaiver provisions aim to give contracting parties flexibility in enforcing their rights under the contract—enforcement that would often be to the detriment of the other party—without "result[ing] in a complete and unintended loss of its contract rights if it later decides that strict performance is desirable." *Id.* § 39:36. So if the specific language of the antiwaiver clause expressly precludes parties from construing certain conduct as a waiver of contractual rights, courts must enforce this provision as part of the parties' agreement. When a contract contains an antiwaiver provision, a party cannot waive a contractual right merely by failing to enforce the provision establishing that right. *See id.*

¶20     The bite of an antiwaiver provision, however, is tempered by the general view that a party may waive a contract provision despite the existence of an antiwaiver clause. *See id.* Even an antiwaiver provision is subject to waiver, in other words. After all, parties always have the right to modify their rights by amending the contract, and waiver of an antiwaiver provision is just such an intentional modification of the contract.

¶21     For these reasons a party asserting waiver in the face of an antiwaiver clause must establish "a clear intent to waive *both* the [antiwaiver] clause and the underlying contract provision." *Id.* (emphasis added). And this second waiver must meet the same standard as waiver of the underlying provision—there must be an intentional relinquishment of that right.[1] *See id.*

---

[1] The district court relied on dicta from *ASC Utah, Inc. v. Wolf Mountain Resorts, L.C.*, stating that "the existence of an antiwaiver provision [is] merely one factor to consider in determining whether a party has waived its rights under the agreement." 2010 UT 65, ¶ 37, 245 P.3d 184. This is correct in the sense that the existence of an antiwaiver provision "is not determinative" and such a provision "can itself be waived." *Id.* ¶¶ 37–38. But *ASC Utah* does not relieve Mounteer of its burden of establishing that the HOA intentionally

(continued . . .)

¶22    This requirement gives the antiwaiver provision effect. An antiwaiver provision embodies the agreement between the parties—an agreement that specifically prohibits the mere failure to enforce a contractual right as being construed as waiver of that right. Allowing waiver where the party has not clearly waived the *antiwaiver* provision would undo this agreement and would "beg[] the question of validity of the non-waiver clause." *Van Bibber v. Norris*, 419 N.E.2d 115, 121 (Ind. 1981); *see also Shields Ltd. P'ships v. Bradberry* 526 S.W.3d 471, 484 (Tex. 2017) ("Such a contract-enforcement principle would be 'illogical since the very conduct which the clause is designed to permit [without effecting a waiver would be] turned around to constitute waiver of the clause permitting [a party to engage in] the conduct [without effecting a waiver].'" (alterations in original) (citation omitted)).

¶23    That leaves the question of what a party must show to establish waiver of both the underlying provision *and* the antiwaiver clause. We have held that an express waiver of a contractual right is sufficient to waive both provisions. *See Calhoun v. Universal Credit Co.*, 146 P.2d 284, 285–86 (Utah 1944). But we have not considered whether an antiwaiver provision may be waived impliedly—by the mere failure to insist on performance of the underlying provision of a contract.

¶24    We now reach that question. And we conclude that the mere failure to insist on performance of an underlying contract provision is insufficient to establish the intentional relinquishment of a party's rights under the antiwaiver provision. We so hold because the failure to insist on performance after breach is entirely consistent with the rights set out in the antiwaiver provision—rights of flexibility that often benefit the otherwise-breaching party. And a finding of waiver in such circumstances would thus render the antiwaiver provision meaningless.

¶25    To establish a waiver of both the insurance clause and the antiwaiver provision Mounteer would have to present evidence sufficient to establish that the HOA effectively agreed not to demand performance. An express waiver would do that. If Mounteer could show that the HOA expressly agreed to abandon its right to insist on

(continued . . .)

relinquished its rights in both the insurance provision and the antiwaiver provision.

the insurance provision then the HOA could not point to the antiwaiver clause in response; an express waiver is a clear abandonment of the antiwaiver clause in this circumstance.

¶26    But the mere failure to insist on performance under the insurance provision cannot give Mounteer a reasonable basis for concluding that the HOA relinquished its right to insist on exact performance. Again, such conduct is entirely compatible with the antiwaiver clause. And Mounteer is accordingly in no position to insist that the HOA's failure to insist on performance changes the parties' agreement.

¶27    In so holding we do not foreclose the possibility that implied waiver may be effected by conduct more clearly amounting to affirmative disavowal of the underlying provision of a contract. The question, again, is whether such conduct is sufficient to establish a reasonable basis for the conclusion that a party has effectively agreed not to insist on performance. And conduct more extensive than that at issue here could possibly satisfy that standard.

¶28    The circumstance at issue in *ASC Utah, Inc. v. Wolf Mountain Resorts, L.C.*, 2010 UT 65, 245 P.3d 184, may be one example. *ASC Utah* involved the alleged waiver of an arbitration clause by a party's extensive participation in litigation over several years (and even the assertion of a counterclaim). Such conduct seems distinguishable from the mere failure to insist on a contracting party's performance of a contractual duty. When a party engages actively in litigation it has (at least arguably) affirmatively disavowed the right to arbitrate. And such affirmative disavowal can be viewed as sufficient to establish a reasonable basis for the conclusion that a party intends to disregard the agreement to arbitrate (and also waived the antiwaiver provision). That is the holding of the *ASC Utah* case.[2]

¶29    And we find *ASC Utah* distinguishable from the one presented here. Here the HOA merely failed to notice the deficiency in the insurance certificates and to immediately insist on performance of the insurance requirement. Such failure cannot amount to waiver without eviscerating the antiwaiver provision. That provision gave the HOA the flexibility not to inspect the

---

[2] *ASC Utah* can also be understood as an express waiver case, in that the waiving party there "expressly stated its intent" to waive "on the record." 2010 UT 65, ¶ 30.

insurance certificates without giving up its right to enforce the provision if it found that Mounteer had breached. There was nothing in the conduct of the HOA that indicated its intent to disavow the insurance provision.

¶30     When Mounteer failed to acquire sufficient insurance it ran the risk that the HOA would discover the deficiency and terminate the contract. And the HOA was thus within its rights in terminating Mounteer for its failure to secure the liability insurance required by the contract. We reverse on this basis.

B

¶31     The HOA has also contended that even if it intentionally relinquished its rights in the insurance provision and the antiwaiver provision, we cannot find waiver because there is no prejudice. We need not reach this issue because we have ruled in the HOA's favor without regard to any proof of prejudice. But we address this question because the briefing in this case has highlighted a point of tension in our case law—on whether prejudice is a required element of waiver.

¶32     For a time we articulated a standard formulation of waiver that did not mention any requirement of proof of prejudice. In *Soter's, Inc. v. Deseret Federal Savings & Loan Ass'n*, for example, we stated that waiver is the "intentional relinquishment of a known right." 857 P.2d 935, 942 (Utah 1993). And we made no reference to a requirement of proof of prejudice. The prejudice element crept into our cases, however, in *In re Estate of Flake*, 2003 UT 17, ¶ 31, 71 P.3d 589. There we made reference to a requirement of proof of prejudice through reliance on a court of appeals decision, *Interwest Constr. v. Palmer*, 886 P.2d 92 (Utah Ct. App. 1994). Our subsequent cases have gone both ways—sometimes we have followed *Soter's* without mentioning prejudice, *see, e.g., Lane Myers Constr., LLC v. Nat'l City Bank*, 2014 UT 58, ¶ 31, 342 P.3d 749, and sometimes we have followed *Estate of Flake* by including the element of prejudice, *see, e.g., Meadow Valley Contractors, Inc.*, 2011 UT 35, ¶ 45.

¶33     This tension is problematic. The time has come for us to clarify our law and to speak with one voice. And we now repudiate the requirement of proof of prejudice as an element of waiver. The prejudice requirement is a doctrinal misfit in the law of waiver. *See* 13 WILLISTON ON CONTRACTS § 39:28 (noting that "there is no need to show reliance by the party asserting or claiming the waiver"); *Johnston Equip. Corp. of Iowa v. Indus. Indem.*, 489 N.W.2d 13, 17 (Iowa 1992) ("Prejudice is irrelevant to a claim of waiver."). Waiver is

dependent only upon a showing of words or conduct manifesting the "intentional relinquishment of a known right." *See Wilson*, 2012 UT 43, ¶ 61 (citation omitted). Prejudice, on the other hand, is relevant only as an element of estoppel. A party may be estopped from contradicting a prior "statement, admission, act, or failure to act" only upon a showing that another party was harmed by its reliance on the prior statement or act. *See Nunley v. Westates Casing Servs., Inc.*, 1999 UT 100, ¶ 34, 989 P.2d 1077 (citation omitted).

¶34    We now so hold. And we repudiate our prior decisions that speak of prejudice as an element of waiver.

### III

¶35    We reverse the district court's decision denying the HOA's motion for judgment notwithstanding the verdict. Mounteer produced no evidence of waiver beyond the HOA's failure to insist on performance of the insurance requirements. And because the HOA was within its rights to terminate the contract, Mounteer's claim of breach of the implied covenant of good faith and fair dealing necessarily fails.

¶36    We also reverse the district court's award of attorney fees to Mounteer as the prevailing party. And because the HOA is now the prevailing party, we remand to the district for an award of its fees.