**2024 UT App 175**

## THE UTAH COURT OF APPEALS

LISA M. NEESHAN,
Appellant,
*v.*
AARON RAVONSHEED,
Appellee.

Amended Opinion[*]
No. 20230122-CA
Filed November 29, 2024

Third District Court, Salt Lake Department
The Honorable Amy J. Oliver
No. 210902271

Brett W. Hastings, Attorney for Appellant

Brennan H. Moss and Charles D. Morris,
Attorneys for Appellee

JUDGE RYAN D. TENNEY authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and RYAN M. HARRIS
concurred.

TENNEY, Judge:

¶1      In 2012, Lisa Neeshan executed a promissory note (the
Note) that was secured by a trust deed on her personal residence
in favor of MJT Corporation (MJT). The Note contained two
penalty provisions that applied if there were late or missed
payments. Of particular importance for this appeal, it also

_____

[*] This Amended Opinion replaces the Opinion that we originally
issued on October 10, 2024. In this Amended Opinion, we made
one change to paragraph 17's description of what prompted the
mortgage statements in question. The rest of the Opinion remains
unchanged.

contained an antiwaiver provision. Over the next several years, Neeshan repeatedly failed to make required payments. During this same period, Neeshan repeatedly asked John Maxfield, MJT's owner, for a statement of the total amount she still owed. Each time, Maxfield responded with an amount that did not include the penalties for missed payments. Maxfield later testified that he chose not to calculate or include those amounts because doing so would have been complicated.

¶2 Maxfield eventually sold the Note to Aaron Ravonsheed. While completing the sale, Maxfield calculated the penalty amounts that Neeshan owed and provided those amounts to Ravonsheed, and Ravonsheed subsequently gave Neeshan a payoff amount that included those amounts. When Neeshan refused to pay, Ravonsheed initiated foreclosure proceedings.

¶3 Neeshan later sued, arguing that Maxfield had waived the right to collect the penalty amounts. At the close of a bench trial, the district court ruled that although Maxfield had knowingly failed to enforce the penalty provisions, he had not intentionally waived the Note's antiwaiver provision. As a result, the court ruled that Ravonsheed retained the right to collect the amounts owed under the penalty provisions. Neeshan now challenges that conclusion on appeal. For the reasons set forth below, we affirm.

BACKGROUND

¶4 In 2012, Neeshan executed the Note for $114,000, which was secured by a trust deed on her personal residence, in favor of MJT. The Note contained two penalty provisions, each of which allowed MJT to assess interest for missed or late monthly payments. One of them accrued based on the monthly payment amount, while the other accrued based on the amount of unpaid principal. The Note also contained an antiwaiver provision that

stated, "No failure or delay by Holder [MJT] in exercising Holder's rights under this Note shall be a waiver of such rights."

¶5    After making some initial payments, Neeshan began regularly missing payments, and she remained behind for roughly the next ten years. Over this same period, Maxfield sent Neeshan eight statements that purported to identify the total amount owing on the Note. Each statement was prepared at Neeshan's request "for tax purposes or when she requested a payoff." Maxfield prepared these statements using his "own template." As later found by the district court, "Maxfield did not create a record of the total amount owed with interest and fees from late payments because he did not know how to calculate the total amount owed on his computer program when there were multiple interest rates that had to be applied." Maxfield did not let Neeshan know that his computations omitted the penalty interest from the payoff amounts.

¶6    Maxfield eventually sold the Note to Ravonsheed. In a spreadsheet that Maxfield prepared for use in this sale, Maxfield acknowledged that he had not calculated the total penalty interest that Neeshan owed, but he represented to Ravonsheed that he thought the penalty interest was still collectable. In one textbox on this spreadsheet, Maxfield wrote that "additional interest on the principal at the penalty rate was never included in mortgage statements"; in another, he "included his calculation of the additional interest at the penalty rate" that he thought was still owed. After the sale was completed, Ravonsheed provided Neeshan with a payoff amount that now included the penalties that Neeshan owed for her past missed payments. This resulted in a payoff amount that was 75% higher than the amount Maxfield had given to Neeshan in the last provided payoff statement— $251,462.66 versus $143,291.00. Neeshan subsequently asked a title company to prepare an estimate of the amount that was owed using the most recent Maxfield statement as a baseline. She then offered to pay Ravonsheed that amount (approximately $162,000).

Ravonsheed disputed the accuracy of Neeshan's proposed payoff amount because it "did not include all the default interest."

¶7     When Neeshan did not resume payments, Ravonsheed initiated foreclosure proceedings. Neeshan then sued to stop the foreclosure. Among other grounds, she argued that MJT had waived the right to collect the penalty interest, as evidenced by the payoff statements that Maxfield had provided.

¶8     The case proceeded to a two-day bench trial, where the facts recited above were established. At that trial, Maxfield also testified about his intent during his dealings with Neeshan. Maxfield testified that "he did not ever state or otherwise indicate that he intended to waive the anti-waiver provision." Maxfield further noted that, in the spreadsheet that he used in the sale of the Note to Ravonsheed, he had indicated that he thought he had not waived the right to collect all the penalty interest.

¶9     The district court subsequently issued a written decision. There, the court agreed that Maxfield had "knowingly failed to enforce all the terms of the [Note] when he provided mortgage statements to Ms. Neeshan reflecting a total amount due of less than he was entitled to under the [Note]." But the court then pointed out that Neeshan had not presented "any evidence that Mr. Maxfield intended to waive the anti-waiver clause." Indeed, in the court's view, "the evidence on that issue indicated just the opposite." In support of this conclusion, the court noted that Maxfield had not "state[d] or otherwise indicate[d] that he intended to waive the anti-waiver provision," and the court then found that his testimony on that point was "credible and uncontroverted." The court also found persuasive Maxfield's annotations on the spreadsheet used to sell the Note, since they "clearly indicated" that the total "amount owing" in Maxfield's mind included interest "that had not been included in the mortgage statements." From all this, the court found that Maxfield had not intended to waive the antiwaiver provision—

and, thus, that Ravonsheed retained the right to collect "all late fees, penalties, and interest" due under the Note.

## ISSUE AND STANDARD OF REVIEW

¶10    On appeal, Neeshan challenges the district court's determination that Maxfield did not waive the antiwaiver provision. "Whether a contractual right has been waived presents a mixed question of law and fact." *Hardy v. Montgomery*, 2018 UT App 133, ¶ 12, 428 P.3d 78. "Whether the trial court employed the proper standard of waiver presents a legal question which is reviewed for correctness, but the actions or events allegedly supporting waiver are factual in nature and should be reviewed as factual determinations, to which we give a trial court deference." *Id.* (quotation simplified).[1]

---

1. Utah cases have long held that waiver presents a fact-dependent mixed question that receives deference on appeal. *See, e.g.*, *State v. Pena*, 869 P.2d 932, 938 (Utah 1994); *Living Scriptures, Inc. v. Kudlik*, 890 P.2d 7, 10 (Utah Ct. App. 1995). In *State v. Levin*, however, our supreme court revised the four-factor test articulated in *Pena* and replaced it with a three-factor balancing test for determining the appropriate standard of review for mixed questions. 2006 UT 50, ¶¶ 25, 27, 144 P.3d 1096.

   Some portions of the briefing in this case at least hint at a potential question about whether a waiver analysis should still be regarded as more fact-like than law-like under the *Levin* rubric. But the parties' briefs have not fully addressed this potential issue, and without such briefing, "we're in no position to do this work ourselves." *Keisel v. Westbrook*, 2023 UT App 163, ¶ 52 n.9, 542 P.3d 536, *cert. denied*, 554 P.3d 1097 (Utah 2024). Moreover, we note that some recent waiver cases have drawn distinctions based on the type of evidence that supported the district court's waiver

(continued…)

ANALYSIS

¶11 Neeshan challenges the district court's determination that Maxfield did not waive the Note's antiwaiver provision. Under the circumstances presented here, we see no basis for overturning that determination.

¶12 Under the well-worn formulation, waiver "is an intentional relinquishment of a known right." *Kiernan Family Draper, LLC v. Hidden Valley Health Centers, LC*, 2021 UT 54, ¶ 29, 497 P.3d 330 (quotation simplified); *accord Mounteer Enters., Inc. v. Homeowners Ass'n for the Colony at White Pine Canyon*, 2018 UT 23, ¶ 17, 422 P.3d 809. Thus, to "constitute waiver, there must be an existing right, benefit or advantage, a knowledge of its existence, and an intention to relinquish it." *Soter's, Inc. v. Deseret Fed. Sav. & Loan Ass'n*, 857 P.2d 935, 942 (Utah 1993) (quotation simplified).

¶13 "Courts do not lightly consider a contract provision waived, however," *Cocks v. Swains Creek Pines Lot Owners Ass'n*, 2023 UT App 97, ¶ 43, 536 P.3d 130 (quotation simplified), and the "element of intent is the central focus in most waiver cases, as it is the element most often in dispute," *Lane Myers Constr., LLC v. National City Bank*, 2014 UT 58, ¶ 34, 342 P.3d 749 (quotation simplified). Moreover, the "intent question is intensely fact

---

determination. *See, e.g., Hardman v. Campbell*, 2024 UT App 115, ¶ 13, -- P.3d – ("[W]hen evaluation of waiver is based upon undisputed facts and on documents in the record, we review it for correctness."); *accord Turpin v. Valley Obstetrics & Gynecology*, 2021 UT App 12, ¶¶ 13–17, 482 P.3d 831. Our determination in this opinion rests in part on the fact that the district court made a finding about Maxfield's lack of intent that the court based, in no small measure, on its evaluation of in-court testimony during a bench trial. As a result, we conclude that it's appropriate to give deference to both that finding and the conclusions the court drew from it.

dependent, turning on whether the totality of the circumstances warrants the inference of relinquishment." *Id.* (quotation simplified). "Although it may be expressed or implied," "the intent to relinquish a right must be distinct." *Wilson v. IHC Hosps., Inc.*, 2012 UT 43, ¶ 62, 289 P.3d 369 (quotation simplified). And the requirement of distinctness "ensure[s] that waiver [will] not be found from any particular set of facts unless it was clearly intended." *Soter's*, 857 P.2d at 940.

¶14   In this appeal, Neeshan does not argue that Maxfield expressly waived the Note's penalty provisions or antiwaiver provision. Instead, Neeshan claims that Maxfield impliedly waived them. In *Mounteer*, our supreme court set forth the contours of the implied waiver doctrine. The court explained that as a general matter, implied waiver occurs where a party "intentionally acted in a manner inconsistent with its contractual rights." *Mounteer*, 2018 UT 23, ¶ 17 (quotation simplified). The court then explained that if the contract in question also contains an antiwaiver provision, the "calculus changes" and a party can no longer "waive a contractual right merely by failing to enforce the provision establishing that right." *Id.* ¶ 19. Instead, the "party asserting waiver in the face of an antiwaiver clause must establish a clear intent to waive *both* the antiwaiver clause and the underlying contract provision." *Id.* ¶ 21 (emphasis in original, quotation otherwise simplified).

¶15   Thus, if a contract contains an antiwaiver provision, the "mere failure to insist on performance of an underlying contract provision is insufficient to establish the intentional relinquishment of a party's rights under the antiwaiver provision." *Id.* ¶ 24. Instead, something more is required—namely, behavior that "amount[s] to affirmative disavowal of the underlying provision of a contract." *Id.* ¶ 27. Such conduct must "establish a reasonable basis for the conclusion that a party has effectively agreed not to insist on performance," i.e., that the

"party intends to disregard" both the underlying provision and the antiwaiver provision. *Id.* ¶¶ 27–28.

¶16 *Mounteer* then pointed to a prior case—*ASC Utah, Inc. v. Wolf Mountain Resorts, LC*, 2010 UT 65, 245 P.3d 184—as an illustration of what such conduct might look like. *See Mounteer*, 2018 UT 23, ¶ 28. In *ASC Utah*, the supreme court concluded that a party waived a contractual right to insist on arbitration where the party had participated in litigation over several years, and the court did so notwithstanding the presence of an antiwaiver provision in the contract at issue. 2010 UT 65, ¶¶ 29, 37–39. In *Mounteer*'s retelling of *ASC Utah*, the party's "active[]" and "extensive" participation in litigation "(at least arguably) affirmatively disavowed the right to arbitrate." *Mounteer*, 2018 UT 23, ¶ 28. *Mounteer* then explained that "such affirmative disavowal can be viewed as sufficient to establish a reasonable basis for the conclusion that a party intends to disregard the agreement to arbitrate (and also waived the antiwaiver provision)." *Id.*

¶17 Neeshan argues that this is analogous to what happened here. As Neeshan points out, the district court found that Maxfield had provided Neeshan with eight mortgage statements over the course of four years, all of which were in response to Neeshan's requests for a payoff amount or for tax purposes. And the district court further concluded that Maxfield "chose not to enforce the strict provisions of the [Note]" in those statements "due to the challenges of calculating the correct amount." Having considered the matter, we acknowledge that this perhaps could be regarded as an indication of Maxfield's intent to not enforce the penalty provisions from the Note.

¶18 But even so, there remains an important difference between this case and *ASC Utah*—namely, the district court here held a trial, took evidence on the question of whether waiver occurred, and then, based on that evidence, found that "the

evidence on that issue indicated" that Maxfield did *not* intend to waive the antiwaiver provision.

¶19    This finding must matter. Again, waiver involves the "*intentional* relinquishment of a known right." *Kiernan Family Draper, LLC*, 2021 UT 54, ¶ 29 (emphasis added, quotation otherwise simplified); *see also Soter's*, 857 P.2d at 942 (holding that there must be the "intention to relinquish" a known right) (quotation simplified)). And in cases in which there is also an antiwaiver provision, "there must be a *clear intent* to waive *both* the underlying provision and the antiwaiver provision." *Mounteer*, 2018 UT 23, ¶ 4 (emphases added).

¶20    Neeshan has not provided us with any persuasive basis for overturning the district court's finding that Maxfield did not have the intent to waive the antiwaiver provision. And to the extent that this finding turned on Maxfield's credibility, it must be given deference on appeal. *See, e.g.*, *In re K.S.*, 2023 UT App 138, ¶ 46, 540 P.3d 705 ("Unlike members of this court, the [lower] court observed the relevant testimony firsthand. As a result, it was in a better position than we are to evaluate the credibility of that testimony and make determinations about the key facts."). And here, as noted by the district court, Maxfield not only testified that he did not have such intent, but this testimony was corroborated by the spreadsheet he prepared while selling the Note, wherein Maxfield "clearly indicated" that he believed the full penalty interest amount was still collectable.

¶21    On appeal, Neeshan does not argue in response that there was insufficient evidence to support the court's finding about Maxfield's lack of intent. Rather, she argues that the district court should not have considered Maxfield's subjective intent at all. In doing so, Neeshan places particular reliance on *Mounteer*'s explanation that "conduct *alone* can impliedly waive a contractual provision even with the existence of an antiwaiver provision." *Mounteer*, 2018 UT 23, ¶ 15 (emphasis added by Neeshan). But

while Neeshan emphasizes the word "alone" in this sentence, we note that it's followed by the word "can." That is to say, if the only or most credible evidence before a district court is the conduct, a court certainly could rely on that conduct as support for a determination that implied waiver occurred. But this doesn't mean that the party's subjective intent is irrelevant. To the contrary, our supreme court has held that waiver should "not be found from any particular set of facts unless it was clearly intended." *Soter's*, 857 P.2d at 940.

¶22    In an express waiver case, intent will of course be readily discernible. That's the *express* portion of the express waiver determination. But intent still remains important in implied waiver cases too, and this is particularly so when there is an antiwaiver provision. Again, *Mounteer* stated that "a party may implicitly waive an antiwaiver provision through conduct, but there must be *clear intent* to waive both the underlying provision and the antiwaiver provision." 2018 UT 23, ¶ 4 (emphasis added).

¶23    As we understand it, what's different is the means of proof. Our cases have long recognized that because intent "can rarely be established directly," "circumstantial evidence" can be used to establish it. *Selvage v. J.J. Johnson & Assocs.*, 910 P.2d 1252, 1262 n.9 (Utah Ct. App. 1996). So in a situation in which a party has not expressly waived a right or a contractual provision, implied waiver allows the court to find waiver if a party's behavior itself "amount[s] to affirmative disavowal of the underlying provision of a contract." *Mounteer*, 2018 UT 23, ¶ 27. In such a case, the party's behavior essentially acts as the circumstantial evidence of the party's intent.

¶24    As noted, however, "courts do not lightly consider a contract provision waived." *Cocks*, 2023 UT App 97, ¶ 43 (quotation simplified). And authorities discussing implied waiver generally have thus stressed that the manifestation of intent from the course of conduct must be clear. *See generally* 17B C.J.S.

*Contracts* § 749 (2024) (recognizing that "the party's conduct must be so manifestly consistent with and indicative of an intention to renounce a particular right or benefit that no other reasonable explanation of the conduct is possible"); 17A Am. Jur. 2d *Contracts* § 624 (recognizing that implied waiver can be shown "by undisputed acts or language so inconsistent with a purpose to stand on the contract provisions as to leave no opportunity for a reasonable inference to the contrary, in which case the waiver is established as a matter of law").

¶25 Here, there was indeed a course of conduct that could have perhaps supported a finding that Maxfield intended to waive the antiwaiver provision. But like the district court, we don't regard Maxfield's course of conduct as being so manifestly indicative of an intention to never assess the penalty provisions that Maxfield's intent to waive both those provisions *and* the antiwaiver provision must be presumed as a matter of law. After all, it's not unheard of in some commercial transactions for a vendor to assess certain fees only at the end. And more to the point, there was also direct evidence in this case (including, of note, from Maxfield himself) about Maxfield's lack of intent, and the district court specifically credited that evidence. In light of this, and in light of past Utah decisions that have anchored waiver determinations to the party's intent, we see no basis for overturning the court's decision that Maxfield did not clearly intend to waive the antiwaiver provision—and, by extension, his rights to assess certain penalties.[2]

---

2. We recognize that in *Mounteer*, the waiver question was submitted to a jury, the jury found that the underlying contractual provision was waived, and yet the supreme court overturned that verdict and held that the district court should have entered a judgment notwithstanding the verdict (i.e., the supreme court concluded that, despite the verdict, there was no waiver).

(continued…)

*Mounteer Enters., Inc. v. Homeowners Ass'n for the Colony at White Pine Canyon*, 2018 UT 23, ¶¶ 3, 11–12, 14–30, 422 P.3d 809. But this doesn't mean that an appellate court should not ordinarily defer to the fact finder in such cases.

As an initial matter, the supreme court concluded that the jury in *Mounteer* had been improperly instructed on the test for implied waiver. The jury there had been told that the "existence of an anti-waiver provision is merely one factor to consider in determining whether a party has waived its right under the agreement," *id.* ¶ 11 (quotation simplified), but, as indicated above, the supreme court concluded a party must show "a clear intent to waive *both* the antiwaiver clause and the underlying contract provision," *id.* ¶ 21 (emphasis in original, quotation otherwise simplified). Based on instructional error alone, the verdict in question was infirm.

More importantly, the supreme court described the non-enforcement at issue in somewhat benign terms—it said that the party in question "merely failed to notice the deficiency in the insurance certificates." *Id.* ¶ 29. From there, the supreme court concluded that there "was nothing in the conduct" of the party "that indicated its intent to disavow" the contractual right at issue, and the supreme court further concluded that the party who was asserting waiver had "produced no evidence of waiver beyond" the mere "failure to insist on performance." *Id.* ¶¶ 29, 35.

In our view, this is consistent with the result we reach here. The course of conduct in this case (affirmatively sending out statements that did not include calculations of penalty interest) was perhaps a touch more indicative of waiver than that which was at issue in *Mounteer*. But as explained above, we don't regard this course of conduct as being so indicative of implied waiver that the district court was required to view it as such. And in addition, the district court also heard, and was persuaded by, evidence that Maxfield never had such intent. Thus, unlike the

(continued…)

¶26 Finally, we offer two clarifications about the scope of our decision.

¶27 First, this isn't to say that a party who has engaged in a course of conduct that's suggestive of waiver could subsequently and unilaterally defeat an implied waiver claim by simply testifying that he or she lacked such intent. When confronted with such a scenario, a district court would still function as the fact finder. And a court could in theory find that any after-the-fact testimony about a lack of intent was not credible—particularly if the party's past course of conduct persuades the court that the party did previously intend to waive the provision in question. Put differently, if the court concludes that, during the period in question, the party's conduct shows that the party did intend to waive the provision at issue, the court could find waiver even despite testimony from the party to the contrary. But as noted, that's not what the district court found here.

¶28 Second, we note that there are other related doctrines that may potentially come into play in similar circumstances that don't require a showing of intent. Among others, courts have recognized waiver by estoppel, a doctrine that does not require intent but does require reliance. *See, e.g.*, *Mounteer*, 2018 UT 23, ¶ 33 ("Waiver is dependent only upon a showing of words or conduct manifesting the intentional relinquishment of a known right. Prejudice, on the other hand, is relevant only as an element of estoppel." (quotation simplified)); *J.R. Hale Contracting Co. v. United N.M. Bank*, 1990 NMSC 089, ¶¶ 11–12, 799 P.2d 581 (where waiver is "based upon the honest belief of the other party that a waiver was intended" but is "contrary to the intention of the party waiving," it is properly characterized as waiver by estoppel rather than as "voluntary waiver, either express or implied in fact," and thus recognizing that "'implied in fact' waivers still represent a

---

situation in *Mounteer*, the evidence below supported the verdict at issue.

voluntary act *whose effect is intended*" (emphasis added)); *see also* 13 *Williston on Contracts* § 39:22 (4th ed. 2024) ("Waiver by implication, or waiver inferred from a party's conduct, will not be found contrary to the expressed intention of the party whose rights would be injuriously affected by it unless the other party has been misled by such conduct to its prejudice."); *id.* § 39:28 ("While a waiver may be implied from conduct in the absence of an express declaration, the waiver must be intentional, at least in the absence of detrimental reliance by the nonwaiving party."). But Neeshan has not argued that a doctrine such as waiver by estoppel applies in this case.

¶29    In short, based on past Utah decisions that have anchored waiver determinations to the party's intent, as well as the state of the record, we see no basis for overturning the district court's decision that Maxfield did not clearly intend to waive the antiwaiver provision—and, by extension, his rights to assess certain penalties.

CONCLUSION

¶30    Utah's waiver doctrine requires the intentional relinquishment of a known right. Because the district court below found that Maxfield had no intent to waive the antiwaiver provision, and because Neeshan has not successfully challenged that finding on appeal, we affirm the district court's conclusion that the implied waiver doctrine did not apply. As a result, we likewise affirm the court's conclusion that Ravonsheed can assess the penalty provisions set forth in the Note.

———————