2025 IL App (1st) 241753-U
Order filed: May 15, 2025

FIRST DISTRICT
FOURTH DIVISION

No. 1-24-1753

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| ERIC LINDBLAD, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 23 CH 04728 |
| | ) | |
| CHARLES G. BLAIR, as Trustee of the | ) | |
| Mignon Buehler Trust, | ) | Honorable |
| | ) | Anna M. Loftus, |
| Defendant-Appellee. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE ROCHFORD delivered the judgment of the court.
Justices Hoffman and Ocasio concurred in the judgment.

**ORDER**

¶ 1    *Held:* In this declaratory action, we affirmed the order denying the trust beneficiary's motion for summary judgment and granting the trustee's cross-motion for summary judgment where the trustee complied with section 813.1(b)(6) of the Illinois Trust Code (760 ILCS 3/813.1(b)(6) (West 2022)) by providing the beneficiary with a complete copy of the trust instrument.

¶ 2    Plaintiff-appellant, Eric Lindblad, one of three beneficiaries of the Mignon Buehler Trust dated May 14, 1987, as amended and restated January 9, 2020, established by his mother, Mignon Buehler, filed a complaint seeking declaratory relief against defendant, Charles G. Blair, the successor trustee. Lindblad alleged that Blair failed to provide him with a complete copy of the trust instrument in violation of section 813.1(b)(6) of the Illinois Trust Code (Trust Code) (760

ILCS 3/813.1(b)(6) (West 2022)). Lindblad and Blair filed cross-motions for summary judgment, and the circuit court granted summary judgment in favor of Blair and against Lindblad. We affirm.

¶ 3    The following factual and procedural history is derived from the pleadings and exhibits of record.

¶ 4    On May 14, 1987, Mignon established the Mignon Buehler Trust (Trust) pursuant to the provisions of a trust agreement entered into by Mignon, as grantor and trustee, (Original Agreement) which she amended and restated at various times between 1987 and 2020. Beginning in 2007 and until her death, Blair acted as Mignon's estate planning attorney. Blair joined the law firm of Levin, Schreder & Carey (LSC) in 2011. LSC has represented Blair throughout this matter.

¶ 5    On January 9, 2020, for the final time, Mignon executed a new will and the pertinent document, titled "Amendment and Restatement of the Trust Agreement Establishing Mignon Bueler Trust" (2020 Restatement). The 2020 Restatement specified:

> "WHEREAS, I created *** 'the Mignon Buehler Trust' (the 'Trust') *** pursuant to the provisions of a Trust Agreement entered into *** on May 14, 1987, as last amended and restated on January 29, 2018 (the last such restatement, the 'Original Agreement'); and
>
> WHEREAS, Section 1.3 of the Original Agreement provided that I, by a signed instrument delivered to the Trustee, may revoke or amend the Original Agreement from time to time; and
>
> WHEREAS, it is my intention to amend and restate the terms of the Original Agreement, with the intent that the Trust shall continue to be known as the 'Mignon Buehler Trust.'

NOW, THEREFORE pursuant to Section 1.3 of the Original Agreement, upon executing this Agreement, I hereby amend and restate the Original Agreement and agree to act in accordance herewith."

The 2020 Restatement is 41 pages in length and sets out in detail the provisions governing the Trust. Mignon made no further amendments or modifications. The 2020 Restatement named Blair as the successor trustee after Mignon's death and directed him, as trustee, to distribute her assets as follows: a specific bequest of $500,000 to, her son, Lindblad and the remainder, after debts and taxes, to the decedents of her daughter, Retana.

¶ 6     Mignon died on December 9, 2020. On March 29, 2021, the circuit court admitted Mignon's will to probate and appointed Blair as executor. Mignon had a "pour-over" will, which directed her executor to distribute any assets in her estate to the Trust.

¶ 7     LSC provided Lindblad with two restatements of the Trust, a restatement dated January 29, 2018 (2018 Restatement) and the 2020 Restatement. On June 4, 2021, Lindblad demanded that Blair furnish all of Mignon's "other estate plan and trust documents for the period May 14, 1987 through her date of her death for his counsel's review" (Mignon's Estate Planning Documents). On June 9, 2021, LSC, by letter, denied his request citing ethical obligations. Lindblad's attorney responded, by letter, on June 10, 2021. LSC responded and, again, denied the request, by letter, on June 18, 2021.

¶ 8     On May 15, 2023, Lindblad initiated this declaratory judgment action, with a complaint against Blair, as trustee of the Trust. Lindblad alleged that, at the time of Mignon's death, the Trust held approximately 8.5 million dollars in assets. Lindblad believed that from May 14, 1987 to January 9, 2020, Mignon made more than two restatements, modifications, amendments, or changes to the Original Agreement. Lindblad alleged and defendant denied that, on March 24,

2021, LSC informed Lindblad that it had in its possession 20 different "Amendments" to the Original Agreement.

¶ 9    Lindblad further alleged that Blair wrongfully denied him access to Mignon's Estate Planning Documents in violation of section 3/813.1(b)(6) of the Trust Code (760 ILCS 3/813.1(b)(6) (West 2022)) and sought a declaration that he was entitled to receive all of "[Mignon's] Estate Planning Documents, including the [Original Agreement] and all restatements, modifications, wills, codicils, and amendments thereto." Lindblad, alleged that, "based upon decades of communications with his mother," Mignon's Estate Planning Documents provided him with gifts upon her death far exceeding $500,000 and that any changes to those greater gifts resulted from fraud or undue influence or both and that the changes are statutorily deemed void *ab initio*. He also alleged that, at an unspecified time, he expressed to LSC that his mother's "mental capacity to make changes to her estate plan and trust documents was also a concern." The only relief sought was a declaration that Blair deliver to Lindblad all of Mignon's Estate Planning Documents, including the Original Agreement and "all restatements, modifications, wills, codicils, and amendments thereto."

¶ 10    On February 13, 2024, Lindblad filed a motion for summary judgment arguing that pursuant to section 813.1(b)(6) of the Trust Code (*id.*), he is entitled to a complete copy of the trust instrument, which includes the Original Agreement and all amendments, modifications, and restatements. Blair filed a cross-motion for summary judgment arguing that, based on the plain statutory language of section 813.1(b)(6), the trustee was obligated only to furnish the 2020 Restatement and was not obligated, under a restated trust, to provide the beneficiary with prior, superseded writings, which were rendered obsolete and inoperative by a restatement.

¶ 11    The circuit court granted summary judgment in favor of Blair and against Lindblad. Lindblad filed a motion for reconsideration, which was denied by the circuit court.

¶ 12    Lindblad appealed from the order denying his motion for summary judgment and granting's Blair's cross-motion for summary judgment and the order denying his motion for reconsideration.

¶ 13    On appeal, Lindblad argues that the circuit court erred in granting summary judgment in favor of Blair. Specifically, Lindblad argues that the circuit court too narrowly interpreted the definition of "a complete copy of the trust instrument" in section 813.1(b)(6) of the Trust Code (760 ILCS 3/813.1(b)(6) (West 2022)), where the Original Agreement was never revoked and still constituted part of the trust instrument. He argues that the narrow reading of "Trust Instrument" prevented him from investigating whether he was cheated out of a bequest greater than $500,000 and that he "may have several causes of action recognized in Illinois which he may learn of upon a review of the trust documents he seeks." Blair, on the other hand argues that because the 2020 Restatement fully restated the terms of the Original Agreement, he was not obligated, under section 813.1(b)(6), to furnish the previous renditions of the trust as they were rendered obsolete and not part of the "trust instrument."

¶ 14    Summary judgment is appropriate where, construed liberally and in favor of the non-moving party, "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2020). Summary judgment should be denied and the issue referred to the trier of fact when reasonable individuals could draw different inferences from the undisputed material facts, or when there is a genuine dispute over a material fact. *Jackson v. TLC Associates, Inc.*, 185 Ill. 2d 418, 424 (1998). When parties file cross-motions

for summary judgment, they agree that there are no issues of material fact and that the case disposition turns on the resolution of purely legal issues. *Founders Insurance Co. v. Munoz*, 237 Ill. 2d 424, 432 (2010). Our review of a circuit court's grant or denial of summary judgment is *de novo*. *Doria v. Village of Downers Grove*, 397 Ill. App. 3d 752, 756 (2009).

¶ 15    What documents a trustee is obligated to furnish to a qualified beneficiary, under section 813.1(b)(6) of the Trust Code (760 ILCS 3/813.1(b)(6) (West 2022)), is a question of statutory interpretation.

¶ 16    " 'The fundamental rule of statutory construction is to ascertain and give effect to the legislature's intent.' " *Mosby v. Ingalls Memorial Hospital*, 2023 IL 129081, ¶ 30 (quoting *In re E.B.*, 231 Ill. 2d 459, 466 (2008). " 'The language of the statute is the best indication of legislative intent, and we give that language its plan and ordinary meaning.' " *Id.* Where the language is plain unambiguous, courts may not read into the law exceptions, limitations, or conditions that the legislature did not express. *Mosby*, 2023 IL 129081, ¶ 31 (citing *Shultz v. Illinois Farmers Insurance Co.*, 237 Ill. 2d 391, 408 (2010). Courts " 'may consider the reasons for the law, the problems sought to be remedied, the purposes to be achieved, and the consequences of construing the statute one way or another.' " *Mosby*, 2023 IL 129081, ¶ 31 (quoting *McDonald v. Symphony Bronzeville Park, LLC*, 2022 IL 126511, ¶ 18. We review questions of statutory interpretation *de novo*. *Mosby*, 2023 IL 129081, ¶ 29 (citing *Raab v. Frank*, 2019 IL 124641, ¶ 18).

¶ 17    A trustee owes a fiduciary duty to a trust's beneficiary. *Gearhart v. Gearhart*, 2020 IL App (1st) 190042, ¶ 144. Illinois law imposes several duties on trustees, including the duty to "administer the trust in good faith, in accordance with its purposes and the terms of the trust, and in accordance with [the Trust] Code" 760 ILCS 3/801 (West 2020); the duty of loyalty (*Id.* § 802); the duty of impartiality (*Id.* § 803); and the duty to inform and account (*Id. §* 813.1), among others.

Section 813.1(b)(6) of the Trust Code provides: "Upon the reasonable request of a qualified beneficiary, the trustee shall promptly furnish to the qualified beneficiary a complete copy of the trust instrument." *Id.* § 813.1(b)(6).

¶ 18    The parties do not dispute whether Lindblad is a "qualified beneficiary," or whether Lindblad made a reasonable request to Blair. At issue here is what documents constitute "a complete copy of the trust instrument."

¶ 19    Section 103(39) of the Trust Code, defines "trust instrument" as

"the written instrument stating the terms of a trust, including any amendment, any court order or nonjudicial settlement agreement establishing, construing, or modifying the terms of the trust in accordance with Section 111, Sections 410 through 416, or other applicable law, and any additional trust instrument under Article 12." *Id.* § 103(39).

"Terms of the trust" is defined as:

"(A) except as otherwise provided in paragraph (B), the manifestation of the settlor's intent regarding a trust's provisions as:

(i) expressed in the trust instrument."

(ii) established by other evidence that would be admissible in a judicial proceeding; or

(B) the trust's provisions as established, determined, or modified by:

(i) a trustee or other person in accordance with applicable law;

(ii) a court order; or

(iii) a nonjudicial settlement agreement under Section 111." *Id.* §103(36).

¶ 20    Lindblad focuses on the language of the 2020 Restatement, that Mignon intended to "amend and restate" the Original Agreement but did not explicitly revoke the Original Agreement.

He argues that as the Original Agreement was not revoked it is one of the written instruments stating the terms of the trust and the trustee was obligated to provide him with the Original Agreement and any and all amendments and restatements made between May 14, 1987 and Mignon's death. Blair, on the other hand, argues that the 2020 Restatement, which amended some provisions but otherwise restated the terms of the Original Agreement, is a complete copy of the trust instrument where the 2020 Restatement rendered the Original Agreement and previous amendments and restatements obsolete.

¶ 21 A court's primary concern in construing a trust instrument is to discover the intent of the settlor. *Harris Trust & Savings Bank v. Donovan*, 145 Ill. 2d 166, 172 (1991). In determining that intent, the court must first consider the plain and ordinary meaning of the words used. *Eychaner v. Gross*, 202 Ill. 2d 228, 256 (2002). We determine the intent as expressed by the instrument's language as opposed to the intent presumed to have been in the settlor's mind. *Spencer v. Di Cola*, 2014 IL App (1st) 121585, ¶ 21.

¶ 22 Mignon created the Original Agreement on May 14, 1987. Under section 1.3 of the Original Agreement, Mignon reserved the right to revoke or amend the Original Agreement, by a signed instrument delivered to the trustee. See 760 ILCS 3/602 (West 2020) (A settlor may revoke or amend a revocable trust instrument by, *inter alia*, "substantially complying with a method provided in the trust instrument.") Between 1987 and 2020, Mignon amended and restated the Original Agreement, at least twice. It is not disputed that Mignon followed the method as provided in section 1.3 of the Original Agreement in executing the 2020 Restatement. Following the 2020 Restatement, Mignon did not amend or modify any terms of the 2020 Restatement.

¶ 23 Mignon died on December 9, 2020, leaving the 2020 Restatement as the final version of the trust. The 2020 Restatement specified that it was Mignon's "intention to *amend and restate* the

terms of the Original Agreement, with the intent that the Trust shall continue to be known as the 'Mignon Buehler Trust.' " (Emphasis added.) It further stated that "pursuant to Section 1.3 of the Original Agreement, upon executing this Agreement, I hereby *amend and restate* the Original Agreement and agree to act in accordance herewith." (Emphasis added.) Based on the language of the 2020 Restatement, it was Mignon's express intention that the 2020 Restatement both amend portions of the Original Agreement and otherwise restate the terms of the Original Agreement within its four corners.

¶ 24     Lindblad cites *Taylor v. Nationsbank Corp.*, 481 S.E.2d 358 (N.C. App. 1997), to show that where Mignon amended and restated the Original Agreement instead of revoking the Original Agreement, it is still part of the trust instrument. In *Taylor*, a settlor created at least five versions of a trust. *Id.* at 359. The first three were revoked prior to his death and two were left in effect at his death: (1) a "Second Restated and Amended Irrevocable Trust Agreement" and (2) a "First Amendment to Second Restated and Amended Revocable Trust Agreement." *Id.* at 359-360. The beneficiaries filed a declaratory judgment complaint, seeking an order requiring the trustee to produce the second restated agreement "together with all versions and amendments of the trust both prior to and since its execution, as well as other documents relating to the trust." *Id.* at 360. The trial court granted the beneficiaries partial relief ordering the trustee to produce the second agreement and the first amendment to the second agreement. *Id.* The parties cross-appealed. *Id.*

¶ 25     On appeal, the appellate court citing section 173 of the Restatement (Second) of Trusts, concluded that a trustee is obligated to provide beneficiaries with complete and accurate information and that beneficiaries are entitled to view a trust document relating to their interest in the trust. *Id.* at 362. The appellate court found that the prior revoked documents were not "reasonably necessary" to enforce the plaintiff's rights or to "redress a breach of trust" in that the

documents were inoperative and that the only two documents that addressed plaintiffs' interest were the second agreement and the first amendment to the second agreement. *Id.* The appellate court held that beneficiaries are entitled to view the trust document from which their interest is derived, but that right does not include trust documents that are no longer operative due to revocation. *Id.*

¶ 26 Lindblad maintains that the *Taylor* decision that the trustee did not need to produce all prior trust documents which were no longer operative was based on their *revocation* and thus the Original Agreement, which had not been explicitly revoked, is still part of the trust instrument. However, we agree with Blair that the holding turns on whether the prior trust documents were operative not whether they were revoked. Here, it is only the 2020 Restatement which is operable and the only instrument from which Lindblad's interest is derived.

¶ 27 Blair cites two cases from different jurisdictions interpreting trust documents that use the terms "amend and restate", which we find persuasive. First, in *Gabbert v. Coyne*, 888 S.E.2d 878, 884-85 (W. Va. 2023), the West Virginia Supreme Court interpreted an "Amended and Restated" trust document which stated that it was the settlor's "intention that it 'amend and restate' the original trust." *Id.* at 884. The court found the language clear and unambiguous and that it "demonstrate[d] that [the "Amended and Restated" trust document] constitute[d] the entire trust, rather than an amendment to the original trust." *Id.* at 885. The court explained where a settlor states their intent to amend and restate the terms of their trust, the settlor intends to render the prior version "fully replaced and superseded."

¶ 28 The second case was cited in *Gabbert*. In *In re Estate of Flake*, 71 P.3d 589 (Utah 2003), *abrogated on other grounds by Mounteer Enters., Inc. v. Homeowners Association for Colony at White Pine Canyon*, 422 P.3d 809 (Utah 2018), the Utah Supreme Court construed a 1998

Restatement in which the settlor expressly stated that he "hereby amends and restates in full" his prior, 1987 trust agreement. The court concluded that the "terms and contents of the 1998 Restatement did fully supercede [*sic*] all of the operative provisions of the original 1987 Trust Agreement."

¶ 29    Here, the 2020 Restatement amended and restated the Original Agreement, and as a result, it replaced and superseded the Original Agreement and any previous amendments and restatements. And because Mignon did not make any further amendments to the 2020 Restatement, the 2020 Restatement is the instrument which states and manifests Mignon's intent regarding the trust. Thus, the clear and unambiguous language of the 2020 Restatement demonstrates that it constitutes the trust instrument.

¶ 30    Lindblad also argues that section 813.1(b)(6) should be broadly interpreted in light of section 406 of the Trust Code (760 ILCS 3/406 (West 2022)) and that the circuit court's interpretation deprived him of redress available to a trust beneficiary who suspects misconduct. We do not agree.

¶ 31    Section 406 states

> "Creation of trust induced by fraud, duress, or undue influence. If the creation, amendment, or restatement of a trust is procured by fraud, duress, mistake, or undue influence, the trust or any part so procured is void. The remainder of the trust not procured by such means is valid if the remainder is not invalid for other reasons. If the revocation of a trust, or any part of the trust, is procured by fraud, duress, mistake, or undue influence, the revocation is void." *Id.*

Section 406 is a distinct section of the Trust Code dealing with the validity of a trust when there is fraud, duress, mistake, or undue influence. On the other hand, section 813.1(b)(6) delineates the

responsibility of a trustee and the rights of a beneficiary as to access to the trust instrument. Further, Lindblad filed a declaratory action solely seeking a declaration as to what constituted the trust instrument under section 813.1(b)(6). He has not brought a trust action contesting the validity of the 2020 Restatement and also did not allege facts in his declaratory judgment complaint supporting a claim of fraud, duress, mistake, or undue influence.

¶ 32    Lastly, Lindblad argues that the statutory definition of a "trust instrument" includes the term "amendment" and therefore he is entitled to every amendment that Mignon made from the Original Agreement to her death. Again, we disagree.

¶ 33    As discussed, because the 2020 Restatement made amendments and otherwise restated the terms of the Original Agreement, any prior amendments also were rendered obsolete. The 2020 Restatement is the written instrument that states the terms of the Trust. The only amendments that Lindblad would be entitled to under section 813.1(b)(6) would be any amendments to the 2020 Restatement itself. As we have stated, there were no amendments to the 2020 Restatement.

¶ 34    Therefore, where Blair provided Lindblad with the 2020 Restatement, the written instrument that stated the terms of the trust, he provided Lindblad with a complete copy of the trust instrument and complied with section 813.1(b)(6). Lindblad was not entitled to the declaratory relief which he sought.

¶ 35    For the foregoing reasons, we affirm the orders of the circuit court denying Lindblad's motion for summary judgment and granting Blair's cross-motion for summary judgment and denying Lindblad's motion for reconsideration where Blair complied with section 813.1(b)(6) of the Trust Code (760 ILCS 3/813.1(b)(6) (West 2022)) by providing Lindblad with a complete copy of the trust instrument.

¶ 36    Affirmed.